BEACON INSURANCE COMPANY OF AMERICA, Appellant and Cross–Appellee,

v.

KLEOUDIS, Admr.; L.M. Lignos Enterprises, Inc.
et al., Appellees and Cross–Appellants.

[Cite as *Beacon Ins. Co. of Am. v. Kleoudis* (1995), 100 Ohio App.3d 79.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 66690, 66731.

Decided March 27, 1995.

*Ulmer & Berne, Murray K. Lenson* and *Lynda M. Quick,* for appellant and cross-appellee.

*Hermann, Cahn & Schneider, Peter J. Krembs* and *Jay H. Salamon,* for appellees and cross-appellants.

*Podor & Associates* and *Kenneth C. Podor,* for Christine Kleoudis, Administrator.

---

JAMES D. SWEENEY, Presiding Judge.

Plaintiff-appellant Beacon Insurance Company of America ("Beacon") appeals the trial court's decision granting the motion for partial summary judgment of the defendants-appellees L.M. Lignos Enterprises, Louis Lignos & Sons, Inc., and M.L. Lignos, Inc. ("Lignos"). Lignos cross-appealed the court's order, as it failed to specifically dispose of the counterclaim filed by Lignos. Although Christine Kleoudis ("Kleoudis"), Administrator of the Estate of Emmanuel Kleoudis, is named as a defendant in the complaint and filed a brief in opposition to the appellant's motion for summary judgment, she is not a party to this appeal.

Emmanuel Kleoudis ("decedent") died as a result of injuries he sustained as an employee of Lignos. Lignos contracted with American Bridge to perform sandblasting operations on the Center Road Bridge. American Bridge placed a barge in the Cuyahoga River, and on or about November 22, 1991, decedent was sandblasting the bridge while on a scaffolding located on the barge. Decedent fell from the scaffolding and died on December 28, 1991.

On November 20, 1992, Christine Kleoudis, as the Administrator of the Estate of Emmanuel Kleoudis, filed case No. 242929 in the Cuyahoga County Court of Common Pleas. This action sought damages for the death of Emmanuel Kleoudis and alleged that Lignos intentionally and/or with substantial certainty failed to provide safety equipment, including safety belts, lifelines, safety nets, lanyards, guard rails, tow boards and/or platforms, failed to provide safety training, and intentionally and/or with substantial certainty allowed the decedent to use equipment which was in improper functioning condition. The action sought recovery on behalf of the family for wrongful death, and the estate sought damages for the physical pain, mental anguish and distress, and medical expenses sustained by Emmanuel Kleoudis, and his lost earnings from November 22, 1991 to December 27, 1991. This action was voluntarily dismissed by Kleoudis on April 27, 1994.

On April 27, 1993, Beacon filed a declaratory judgment action seeking an adjudication that it was not required to either defend or indemnify Lignos. Beacon also requested that Kleoudis be restrained from initiating an action to recover under the policy. Beacon filed a motion for summary judgment, and Lignos filed a motion for partial summary judgment. Beacon, Lignos, and Kleoudis filed briefs in opposition, and Lignos filed a reply brief.

On December 1, 1993, the trial court determined that Beacon had a duty to defend Lignos in the underlying tort action filed by Kleoudis.

Beacon asserts one assignment of error, and Lignos asserts one cross-assignment of error.

Beacon's assignment of error:

"The trial court erred in denying plaintiff-appellant Beacon Insurance Company of America's motion for summary judgment and in granting defendants-appellees' motion for partial summary judgment."

Beacon argues that the trial court erred in finding that it had a duty to defend Lignos in the action brought by Kleoudis. Lignos contends that the complaint is arguably or potentially within the policy coverage.

In *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, the Supreme Court cited its holding in *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555. In *Willoughby Hills,* the court held that where the insurer's duty to defend is not apparent from the pleadings, but the allegations state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pled, the insurer must accept the defense of the claim. In *Sanderson,* the court stated that an insurer has an absolute duty to defend under certain conditions:

"An insurance policy which states that the insurer is obligated to defend in any action seeking damages payable under the policy against the insured, even where the allegations are groundless, false or fraudulent, imposes an absolute duty upon the insurer to assume the defense of the action where the complaint states a claim which is partially or arguably within policy coverage." *Id.* at paragraph one of the syllabus.

Beacon issued to Lignos two separate policies of insurance, the primary policy is entitled "Commercial General Liability Coverage" ("General Liability"); this policy includes stop-gap employers' liability insurance. The excess policy is entitled "Commercial Catastrophe Liability Policy Coverage" ("Catastrophe").

Lignos has not sought coverage from Beacon under the General Liability policy for the wrongful death claim and has not sought coverage under the Catastrophe policy for the survivorship claims. Therefore, this court will only consider whether or not there is coverage for the wrongful death action under the Catastrophe policy and for the survivorship claims under the General Liability policy.

Beacon asserts that the General Liability policy provides no coverage for the survivorship claim because under the stop-gap liability endorsement it provides:

"COVERAGE E.   STOP GAP EMPLOYERS' LIABILITY

"1.   Insuring Agreement

"We will pay those sums you become legally obligated to pay as damages because of 'bodily injury' to which this insurance applies.  The 'bodily injury' must be caused by an 'occurence' [sic] to any of your employees whose remuneration has been reported and declared under the Workers' Compensation Law of The State of Ohio, and who has been injured in the course of his employment by you.  We will not pay if the injured employee is entitled to receive the benefits provided by The Workers' Compensation Law.

" * * *

"We have the right and duty to defend any 'suit' against you seeking these damages, even if the allegations of the 'suit' are groundless, false or fraudulent. We may investigate and settle any claim or 'suit' at our discretion.  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage E."

The appellant argues that two exclusions preclude coverage under this portion of the policy:

"2.   Exclusions

" * * *

"i.  To 'bodily injury' by accident or disease (including death) sustained by a master or crew member of any vessel, or to any of your employees subject to the United States Longshoremen's and Harbor Worker's Compensation Act, the Federal Employers' Liability Act or the Federal Coal Mine Health and Safety Act.

" * * *

"k.   To any injury sustained because of an act committed intentionally by or at the direction of you or any of your executive officers, directors, stockholders or partners."

It is important to note here that under the General Liability policy, Beacon has both the right and the duty to defend a suit against Lignos even where the allegations are groundless, false, or fraudulent.  Where a theory of recovery is even arguably within the terms of the policy, the insurer must defend the insured, see *Sanderson, supra.*

Under exclusion (i), Beacon contends that decedent was subject to the United States Longshoremen's and Harbor Worker's Compensation Act ("LHWCA"), as amended, Section 901 *et seq.* Title 33, U.S.Code.  Beacon argues

that the operative words are "subject to," and that decedent is not required to apply for or receive benefits under the LHWCA, but merely be eligible to do so.

In *Herb's Welding, Inc. v. Gray* (1985), 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406, the United States Supreme Court held that a welder injured on an off-shore oil platform was not covered under the LHWCA. The court held that the LHWCA "provides compensation for the death or disability of any person engaged in 'maritime employment,' § 902(3), if the disability or death results from an injury incurred upon the navigable waters of the United States or any adjoining pier or other area customarily used by an employer in loading, unloading, repairing, or building a vessel, § 903(a). Thus, a worker claiming under the Act must satisfy both a 'status' and a 'situs' test." (Footnote omitted.) *Id.* at 415–416, 105 S.Ct. at 1423, 84 L.Ed.2d at 409.

The Supreme Court noted that the Act does not define "maritime employment," and that Congress did not seek to cover all those who breathe salt air. The purpose of the Act was to cover workers on the situs who are involved in the essential elements of loading and unloading. The court, in determining that Gray was not covered under the LHWCA held:

" * * * While 'maritime employment' is not limited to the occupations specifically mentioned in § 2(3), neither can it be read to eliminate any requirement of a connection with the loading or construction of ships. As we have said, the 'maritime employment' requirement is 'an occupational test that focuses on loading and unloading.' *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 80 [100 S.Ct. 328, 336, 62 L.Ed.2d 225, 235] (1979). The Amendments were not meant 'to cover employees who are not engaged in loading, unloading, repairing, or building a vessel, just because they are injured in an area adjoining navigable waters used for such activity.' H.R.Rep. No. 92–1441, p. 11 (1972) [S.Rep. No. 92–1125, p. 13 (1972), U.S.Code Cong. & Admin.News 1972, p. 4708]. We have never read 'maritime employment' to extend so far beyond those actually involved in moving cargo between ship and land transportation. Both [*Northeast Marine Terminal Co. v.*] *Caputo* [432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320] [ (1977) ] and *P.C. Pfeiffer Co.* make this clear and lead us to the conclusion that Gray was not engaged in maritime employment for purposes of the LHWCA." (Footnotes omitted.)

Based upon the test set forth in *Gray*, it is clear that although the "situs" test was satisfied in the case *sub judice*, the "status" test was not. Although decedent was performing his job while located on a barge on the Cuyahoga River, the services he was rendering to his employer did not constitute "maritime activity." Decedent was not subject to the LHWCA, and exclusion (i) is not applicable.

■ Beacon next briefly argues that exclusion (k), *supra*, under the stop-gap employers' liability, precludes coverage for any injury sustained because of an act committed intentionally or by the direction of Lignos. Lignos cites *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St.3d 173, 551 N.E.2d 962, and notes that the Supreme Court held that an intentional tort is one where the actor desired to cause the consequences of his act or he believed that the consequences were substantially certain to occur. The court found two levels of intent. The first is direct intent, where the actor does something which brings about the exact result intended, and the second, inferred intent, where the actor does something which he believes is substantially certain to cause a particular result, even if the actor does not desire that result. The court found that most employer intentional torts fall within the second category. Lignos essentially argues that the exclusion as written by Beacon does not specify which type of intent is not covered, and is therefore ambiguous.

While this argument is persuasive, the Supreme Court in the syllabus of *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, recently stated:

"In order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended."

Although *Swanson* does not interpret a commercial policy of insurance, the underlying issue is no different. In *Swanson*, the court determined that while a BB gun was intentionally fired in the direction of the injured person, the resulting injury was neither intended nor substantially certain to occur. In that case, the finder of fact conclusively found that the injury was accidental.

Here, it is possible that a finder of fact could determine that although Lignos may have directed decedent to work in an unsafe environment without proper safety training or equipment, the resulting injuries were accidental. Beacon has not demonstrated that the injuries suffered by decedent were expected or intended. Given the standard in *Sanderson, supra,* that the claims must only be arguably within the policy coverage, the trial court did not err in finding that Beacon must defend Lignos on the survivorship claims.

■ Turning next to the assertion by Beacon that no coverage was provided to Lignos under the Catastrophe policy for wrongful death, it is equally clear that the trial court committed no error.

The pertinent sections of the Catastrophe policy state as follows:

"PART I—COVERAGE

"1. Limit of Liability

"We will pay loss in excess of the primary limit as listed in Schedule A or the retained limit (if not covered by primary but otherwise covered by this policy) because of

"Coverage A—Bodily Injury,

"Coverage B—Property Damage,

"Coverage C—Personal Injury, or

"Coverage D—Advertising Injury

"caused by an occurrence to which this policy applies, and such injury or damage happens anywhere during the policy period.

" * * *

"4. Defense and Supplementary Payments

" * * *

"C. Losses Not Covered by Primary Policies:

"If you have a loss which is covered by this policy but not covered by any of your primary policies, we will defend you at our expense. We may investigate and settle any claim at our discretion. If we make any payment which falls within your retained limit, you agree to reimburse us.

"Our right and/or duty to defend under paragraphs A., B., C., above ends when we have used up the applicable limit of liability in the payment of loss(es).

" * * *

"PART II—DEFINITIONS

" * * *

"9. Occurrence

"A. With respect to Coverage A Bodily Injury and Coverage B Property Damage, occurrence means an accident including continuous or repeated exposure to substantially the same general harmful conditions neither expected nor intended from the standpoint of the Insured unless injury or damage results from use of reasonable force to protect persons or property.

"B. With respect to Coverage C Personal Injury or Coverage D Advertising Injury, occurrence means an accident, happening, or event described as injury in the definitions of those terms in this policy.

"10. Personal injury means injury, other than 'bodily injury', arising out of one or more of the following offenses committed during the policy period:

"A. False arrest, detention or imprisonment;

"B. Malicious prosecution;

"C. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

"D. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

"E. Oral or written publication of material that violates a person's right of privacy;

"F. Mental anguish, mental injury, including fright, shock, and humiliation;

"G. Discrimination because of Race, Religion, Age, Sex or Physical Disability, but excluding[:]

"(1) Discrimination committed by or at the direction of the Insured,

"(2) Judgment or final adjudication adverse to the Insured which establishes that such discrimination by the Insured occurred as the cause of action,

"(3) Insurance therefor which is prohibited by law, or

"(4) Punitive or exemplary damages, fines or penalties

"PART III—EXCLUSIONS

" * * *

"3. This policy does not apply to:

"A. Any obligation an Insured may have under a workers' compensation, disability benefits or unemployment compensation law, or any similar law;

"B. Bodily injury to:

"(1)(a) An employee of the insured arising out of and in the course of employment by the insured; or

"(b) The spouse, child, parent, brother or sister of that employee as a consequence of (a) above."

Beacon argues that pursuant to the definition of "personal injury," the claims must have arisen from one of the enumerated offenses listed under definitions in Section 10. Beacon contends that the claims in the complaint filed by Kleoudis do not fall within these offenses. Specifically, Beacon argues that Section 10(F) does not apply, as the mental anguish and mental injury of the surviving spouse and children is a derivative claim for bodily injury, for which there is no applicable coverage under the Catastrophe policy.

Lignos counters that the definition of "wrongful death" was established by the legislature in R.C. 2125.02, and that included as an element of damages is the mental anguish incurred by the surviving spouse, minor children, parents, or

next-of-kin. Lignos asserts that this is sufficient to require coverage under the Catastrophe policy.

The Catastrophe policy provides coverage for both bodily injury and for personal injury. Under the plain language of the policy, drafted by Beacon, the Catastrophe policy provides coverage for personal injury arising out of mental anguish, mental injury, fright, shock, and humiliation. Once a complaint is filed which alleges such damages as fall within the policy coverage, Beacon has undertaken an obligation to defend and indemnify.

Here, the complaint filed by Kleoudis specifically stated that the claim was brought under R.C. Chapter 2125 for the benefit of the surviving spouse and children. Since the statute provides for damages due to mental anguish, the complaint as pled was sufficient to require Beacon to represent and indemnify Lignos.

■ Beacon also argues that the bodily injury exclusion set forth in 3(B), *supra*, clearly excludes from coverage a claim for wrongful death. However, this court has held that a claim for wrongful death, although derivative of a claim for bodily injury, is a separate claim for personal injury. See *McGowan v. State Auto. Mut. Ins. Co.* (Feb. 4, 1993), Cuyahoga App. No. 61517, unreported, 1993 WL 27575.

■ Beacon may have intended that any claims for wrongful death be omitted from coverage, but it failed to place the exclusion in the proper category. The insurer, being the one who selects the language in the contract, must be specific in its use, and an exclusion from liability must be clear and exact in order to be given effect. *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488, 490, citing *Am. Fin. Corp. v. Fireman's Fund Ins. Co.* (1968), 15 Ohio St.2d 171, 44 O.O.2d 147, 239 N.E.2d 33. Thus, the bodily injury exclusion does not apply to the wrongful death claim of Kleoudis.

The trial court correctly determined that Beacon had a duty to defend and indemnify Lignos against the claims set forth in the complaint filed by Kleoudis for the Estate of Emmanuel Kleoudis.

Beacon's assignment of error is overruled.

■ Lignos' assignment of error is:

"A trial court, in granting a motion for partial summary judgment, errs in dismissing the entire action with prejudice where a pending counterclaim has neither been addressed by the parties nor discussed by the court in its purported final appealable order."

This court previously remanded this case to the court of common pleas for a resolution of Lignos' cross-claim. Subsequently, Lignos voluntarily dismissed the cross-claim, and the assignment of error set forth above has been rendered moot.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HARPER and NAHRA, JJ., concur.