MILLERS MUTUAL INSURANCE COMPANY, Appellant,

v.

PLASTIVAX, INC. et al., Appellees.

[Cite as *Millers Mut. Ins. Co. v. Plastivax, Inc.* (1996), 113 Ohio App.3d 678.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 95–L–176.

Decided Aug. 26, 1996.

*Harold H. Reader* and *Diane Sebold,* for appellant.

*Bertsch, Millican & Winslow Co., L.P.A., James T. Millican II* and *Ann E. Leo,* for appellee Plastivax, Inc.

*Gerald R. Horning,* for appellees Ronald L. and Laurena Hughes.

FORD, Presiding Judge.

Appellant, Millers Mutual Insurance Company, appeals from a declaratory judgment of the Lake County Court of Common Pleas in favor of appellees, Plastivax, Inc., and Ronald Hughes and Laurena Hughes.[1]

Hughes, a temporary employee assigned to work for Plastivax, injured his arm while cleaning a boring mill machine at the Plastivax facility. In September 1994, Hughes filed a complaint for personal injury alleging that Plastivax had committed an intentional tort against him.[2] Plastivax demanded that appellant provide its defense and pay any judgment awarded against it. Appellant provided a defense to Plastivax under a reservation of rights.

In February 1995, appellant filed a separate declaratory judgment action seeking to absolve itself from the duty to defend or indemnify Plastivax in Hughes's suit based on exclusionary provisions in the insurance contract.[3] Appellant moved for summary judgment, and the trial court overruled the motion, stating that "a question of material fact existed regarding whether the exclusion for injuries 'expected or intended from the viewpoint of the insured' applied." The trial court concluded that appellant had not presented any evidence demonstrating that the accident was expected or intended from the standpoint of

1. Hereinafter, appellees will be referred to as "Plastivax" and "Hughes."

2. Count One of Hughes's complaint alleged that Plastivax "had knowledge of the existence of a dangerous process, procedure or condition within its business operations; knew that if plaintiff was subjected by his employment to such dangerous process, procedure or condition that harm to the plaintiff would be a substantial certainty; acted to require plaintiff to continue to perform the dangerous task under such circumstances, all of which directly and proximately caused plaintiff to suffer a serious injury."

3. The declaratory judgment action was heard before Judge Mitrovich.

Plastivax and, accordingly, determined that the exclusion was inapplicable. The trial court determined that coverage was available under the policy, and held that appellant had an obligation to defend Plastivax until appellant demonstrated that coverage was not possible under the contract.

Appellant timely appealed and raises the following assignment of error:

"The trial court erred in finding that coverage is available under the contract of insurance between appellant Millers Mutual and [Plastivax] * * *."

Appellant submits that the insurance policy in question here excludes coverage for bodily injuries to an employee arising out of and in the course of employment, and bodily injuries that are expected or intended from the insured's standpoint in the course of business. Thus, appellant contends that this policy does not provide coverage to an employer sued by an employee for an intentional tort occurring in the course of employment. Accordingly, appellant argues that no coverage is available to Plastivax under the policy and that it is under no duty to defend or indemnify Plastivax.

The primary issue raised in the declaratory judgment action in the trial court was whether appellant was relieved from its duty to defend or indemnify Plastivax in the collateral case of *Hughes v. Plastivax, Inc.*, Lake C.P. No. 94CV001285. Initially, we review the policy language. The insurance contract grants commercial general liability coverage to Plastivax. The policy provides coverage for "bodily injuries" that result from an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy exclusions provide as follows:

"2. *Exclusions*

"This insurance does not apply to:

"*a.* 'Bodily injury' * * * expected or intended from the standpoint of the insured. * * *

" * * * *

"*e.* 'Bodily injury' to:

"(1) An employee of the insured arising out of and in the course of employment by the insured * * *."

The policy also states that "[appellant] will have the right and duty to defend any 'suit' seeking those damages." The duty to defend depends on the scope of the allegations in the underlying complaint. *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, paragraph two of the syllabus. In *Ohio Cas. Ins. Co. v. Joseph Sylvester Constr. Co.* (Sept. 30, 1991), Trumbull App. No. 90–T–4439, unreported, 1991 WL 206628, this court stated:

"The duty to defend does not extend to allegations in a complaint against an insured which clearly fall outside the coverage provided by an insurance policy, or to allegations which are excluded from such coverage. If there is *no* set of facts alleged in the complaint which, if proven true, would result in the insurer's duty to pay damages on behalf of an insured, then the insurer need not provide a defense. * * *" (Emphasis *sic.*) *Id.* at 11, citing *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118.[4]

Pleading factors which bear materially on this type of tort action are intertwined in a phylum-like, coextensive manner with the evidential requirements. In *Pirone v. Gen. Motors Corp.* (May 6, 1994), Trumbull App. No. 92–T–4810, unreported, 5–6, 1994 WL 188669, this court stated:

"Under the test set forth in *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 118 [570 N.E.2d 1108, 1112], which modified the language of the test set forth in *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100 [522 N.E.2d 489], three elements must be proven in employer intentional tort cases:

" '(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to so require the employee to continue to perform the dangerous task.' "

Hughes's complaint alleged that "[w]hile cleaning the Thermwood boring mill with an airhose as directed by his foreman at Plastivax, plaintiff's arm came into contact with a spinning part of the machine." Additionally, because Hughes's complaint alleges a "bodily injury" caused by an "occurrence," this language in the complaint, without more, would appear to bring the underlying tort case within the general liability language of the policy. Therefore, it becomes necessary to examine the policy's exclusions to determine whether any are applicable. Again, the policy at issue excludes coverage for expected or intended injuries.

---

**4.** But, cf., *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555. Under *Willoughby*, "the insurer has a duty to defend where the allegations of the underlying complaint state a claim potentially or arguably within coverage * * * ' "even if any of the allegations of the suit are groundless, false, or fraudulent * * *." ' " *Preferred Risk*, 30 Ohio St.3d at 114, 30 OBR at 429, 507 N.E.2d at 1123, citing *Willoughby Hills* at syllabus and at 177, 9 OBR at 463, 459 N.E.2d at 556. In the policy at issue, appellant made no promise to defend potentially groundless, false, or fraudulent claims.

The threshold issue is the requisite proof of intent which will permit appellant to be relieved from defending the suit.[5] The seminal cases emanating from the Supreme Court of Ohio on this subject from 1982 to date manifest a progressive metamorphosis of definitional attitudes with significant sequential modifications of earlier declared concepts. In 1982, the Supreme Court of Ohio held that employees could sue their employers for intentional torts. *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, syllabus. In *Miller*, the Second District Court of Appeals reviewed *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 31 OBR 180, 509 N.E.2d 74, a case that required the court to determine whether a particular policy covered an employer's intentional tort, stating:

"The policy provided coverage for injuries that were neither expected nor intended from the standpoint of the insured and excluded coverage for injuries suffered by employees during the course and scope of employment.

"The Court found that the policy did not provide coverage for intentional torts, stating, '[W]e are unable to see how Wedge could have committed any acts with the belief that Pariseau and Walls were substantially certain to be injured, yet not have "expected" such injuries.' In other words, the Court found that if an employer is being sued on a 'substantially certain' tort theory it must follow that the employer expected such an injury. If the employer expected the injury, then the policy exclusion for intended or expected injuries would be triggered, obviating coverage. * * * " (Citation omitted.) *Miller v. Midwestern Indemn. Co.* (Feb. 23, 1996), Montgomery App. No. CA 15360, unreported, at 12.

The *Wedge* court held:

"An intentional tort allegedly committed by an employer against its employee is not covered by an insurance policy which provides protection for bodily injuries 'neither expected nor intended' by the employer." *Id.* at syllabus.[6]

In *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St.3d 173, 551 N.E.2d 962, the court explained the definitions of intent set forth in the Restatement of

---

5. See *Miller v. Midwestern Indemn. Co.* (Feb. 23, 1996), Montgomery App. No. CA 15360, unreported, 1996 WL 397450, certified conflict to the Supreme Court of Ohio dismissed in (1997), 77 Ohio St.3d 1261, 674 N.E.2d 367, for an excellent review of the case law on the issue of insurance coverage for intentional torts and intended and expected policy exclusions.

6. "The [*Wedge*] Court [also held] that the injury would also be excluded from coverage because the policy explicitly excluded injuries suffered in the course and scope of the employee's employment." *Miller* at 13. The *Wedge* court further held that insurance for intentional torts is against public policy. *Wedge*, 31 Ohio St.3d at 67, 31 OBR at 181, 509 N.E.2d at 75.

the Law 2d, Torts, as had been adopted by the court in *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, and *Van Fossen, supra:*

"This definition encompasses two different levels of intent. The first level, which we will refer to as 'direct intent,' is where the actor does something which brings about the exact result desired. In the second, the actor does something which he believes is substantially certain to cause a particular result, even if the actor does not desire that result. * * *

"It appears that most employer intentional torts * * * fall into the latter category."[7] (Footnotes omitted.)

In *Continental Ins. Co. v. United Foundries, Inc.* (Dec. 30, 1993), Stark App. No. CA 9342, unreported, at 2, 1993 WL 564227, the Fifth District Court of Appeals analyzed *Harasyn,* stating:

"Though in *Harasyn* the [S]upreme [C]ourt departed from *Wedge Products* by holding that an employer can obtain insurance coverage for 'substantial certainty' torts, its result was determined by an endorsement policy[8] which expressly deleted the exclusions found in the underlying primary policy. As such, the [S]upreme [C]ourt expressly distinguished *Wedge Products* on this factual difference and chose not to overrule it. However, left unchanged was the [S]upreme [C]ourt's analysis and decision as to the exclusion from coverage provided by the 'neither expected nor intended' language."

Although many courts have decided that the *Wedge* and *Harasyn* holdings are inconsistent, it is our view that the decisions are not inapposite. Both cases stand for the proposition that employer intentional torts can be excluded from coverage. The distinguishing factor that triggered the finding that coverage was available in *Harasyn* was the existence of the stopgap endorsement, which effectively deleted the exclusions, and provided the coverage for which the employer had paid the extra premium.

The Eighth District Court of Appeals further examined the *Harasyn* holding, stating:

---

7. The *Harasyn* court also determined that insuring against substantially certain intentional torts is not against public policy as opposed to the contrary position declared in *Wedge.*

8. In *Budacov v. Thomarios Painting Co., Inc.* (July 19, 1995), Summit App. No. 16962, unreported, 1995 WL 434411, the Ninth District Court of Appeals analyzed *Harasyn,* stating: "In *Harasyn,* in addition to a general liability policy, the employer had paid a separate premium for an 'Employer's Liability Stop–Gap Coverage Endorsement,' which the insurer subtitled as a supplementary state endorsement for Ohio. In light of the additional stop-gap endorsement, the Supreme Court held that, unlike the general liability policy before the court in *Wedge Products,* the stopgap endorsement in *Harasyn* had been written 'specifically for Ohio employers' and extended coverage to employer intentional torts." (Citations omitted.)

"The logical explanation of the *Harasyn* court interpretation is that where an employer's policy of coverage purports to cover an injury to an employee arising out of and in the course of his or her employment, an intentional tort that is inferred from 'substantial certainty' of injury and not as a deliberate intent to harm an employee is covered by the policy." *Ward v. Custom Glass & Frame, Inc.* (1995), 105 Ohio App.3d 131, 140, 663 N.E.2d 734, 739.

In *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, syllabus, the court held that "[i]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended." "It is not sufficient to show merely that the act was intentional." *Id.* at 193, 569 N.E.2d at 910. The Second District Court of Appeals applied the rule announced in *Swanson* to a substantially certain intentional tort claim against an employer, and held:

"We find that *Swanson* is controlling on the issue of intended or expected exclusions. As interpreted by the Supreme Court in *Swanson* * * *, intended or expected injury exclusions do not come into operation unless it is proved that the insured not only intended the act, but also intended the resulting injury. The exclusion does not apply if ' "the insured intentionally does an act, but has no intent to commit harm, even if the act involves the foreseeable consequences of great harm * * *." ' " *Miller* at 30.

It is not surprising to observe that the foregoing pronouncements by our Supreme Court regarding the effect of their holdings on intentional torts in the workplace and insurance contract language bearing on that concept have caused interpretative difficulties in our appellate districts with resulting inapposite analysis and decisions.

We note that the policy language in the instant case is similar to the language in *Wedge*. The policy at issue excludes coverage for "expected or intended" injuries, whereas the policy in *Wedge* provided coverage for injuries only if they were "neither expected or intended." We believe that the result is the same in either case, essentially that intentional injuries are excluded from coverage.

■ The *Wedge* court determined that the "expected or intended" language, standing alone, was sufficient to preclude the insurer's duty to defend or indemnify, because in that case the intent to cause the actual injury was inferred. Similarly, in *Harasyn*, the exclusionary language would have been sufficient to preclude the insurer's duty to defend or indemnify if there had not been a stop-

gap endorsement. With the advent of *Swanson*, in order to escape the obligation to defend or indemnify, the insurer bears the expanded obligation of showing that the actual injury was intended. See, also, *Ward*, 105 Ohio App.3d at 143, 663 N.E.2d at 741; *Moler v. Beach* (1995), 102 Ohio App.3d 332, 335, 657 N.E.2d 303, 305.[9]

 It is our view that pursuant to *Swanson*, the generalized "expected or intended" exclusionary language in the case *sub judice* does not operate to automatically exclude an employer intentional tort of the "substantially certain" variety.[10] Because intent to cause the actual resulting injury is no longer inferred as in *Wedge*, there must be a prior showing that the injury which actually occurred was specifically intended in order for the exclusion to come into operation.[11] While commenting on the meaning and application of the "expected or intended from the standpoint of the insured" exclusionary clause, the *Miller* court poignantly provided an everyday understanding of this language in a graphic tone:

"In the present case, American Concrete has stipulated that because it failed to maintain the forklift, that harm to its employees was a substantial certainty. There is no evidence, however, that American Concrete intended that Jeffery Miller be killed by the forklift. Thus, the intended or expected exclusion would not operate to eliminate coverage for Miller's death." *Id.* at 30.

---

9. In *Great Am. Ins. Co. v. Hartford Ins. Co.* (1993), 85 Ohio App.3d 815, 621 N.E.2d 796, this court followed the *Swanson* rule, and held that the insurer was required to defend the claim. However, the *Hartford* decision was primarily based on the duty-to-defend rule set forth in *Willoughby Hills*, as the insurer in *Hartford* had promised in the policy to defend any suit, even if any of the allegations were groundless, false, or fraudulent.

10. But, cf., *Presrite Corp. v. Commercial Union Ins. Co.* (May 16, 1996), Cuyahoga App. No. 68704, unreported, 1996 WL 257445. In *Presrite*, the court held that "a policy exclusion of 'bodily injury caused intentionally by you or at your direction' does not exclude coverage for an intentional tort arising from a risk of injury which the employer knew or should have known was substantially certain to occur." *Id.* at 12. In rejecting the insurer's claim that the "language of the policy specifically exclude[d] coverage for all intentional torts, whether directly intended or for which intent is inferred," the court reasoned that "the plain language of this exclusion refers only to 'direct intent' intentional torts. Nowhere in this exclusion is there any reference to intentional torts that are substantially certain to occur." *Id.* at 3, 10. The court also opined that "an exclusion of 'substantial certainty' intentional torts only [occurs] when the insurance policy explicitly excludes this type." *Id.* at 11. The court did not make any reference to the rule announced in *Swanson*.

11. "Outside of gunshots [fired] at point blank range and the sexual molestation of children, Ohio courts have adhered to the *Swanson* rule that intent to injure or its expectation are questions of fact, and intent or expectation is not to be presumed as a matter of law." *Moler* at 337, 657 N.E.2d at 306. See, also, *Westfield Ins. Co. v. Roberts* (1993), 88 Ohio App.3d 532, 624 N.E.2d 343.

This court translates this language in such clauses to effectuate an exclusion from coverage when there is evidence of a "direct intent" by the employer to cause the same injury sustained by the employee in the scope of employment.

Nevertheless, the insurer can avoid the obligation to defend or indemnify an employer intentional tort claim when there is no stopgap endorsement granting coverage for substantially certain employer intentional torts. The *Harasyn* court noted that its holding was distinguishable from *Wedge* because the policy in *Wedge* did not contain a supplemental stopgap endorsement. In the instant case, there is no stopgap endorsement similar to the one in *Harasyn*. Thus, *Harasyn* is applicable in limited cases, namely those where the employer has purchased a supplemental stopgap endorsement which provides coverage for intentional torts that were committed with substantial certainty. See, also, *Budacov*. The *Harasyn* court aptly stated the rationale supporting this position:

"The better view is to prohibit insurance only for those intentional torts where 'the fact of insurance coverage can be related in some substantial way to the commission of wrongful acts of that character.' In the case of a 'direct intent' tort, the presence of insurance would encourage those who deliberately harm another. In torts where the intent is inferred from 'substantially certainty' of injury, the presence of insurance has less effect on the tortfeasor's actions because it was not the tortfeasor's purpose to cause the harm for which liability is imposed. \* \* \* In the latter situation, the policy of assuring victim compensation should prevail. \* \* \* " (Citations and footnote omitted.) *Id.,* 49 Ohio St.3d at 176, 551 N.E.2d at 965.

In the workplace, the existence of exclusionary language in addition to the absence of a stopgap endorsement reinforces the conclusion that there is no duty to defend or indemnify a substantially certain employer intentional tort.

We hold that when an injured employee brings an action alleging an intentional tort against his or her employer, and where there is no stopgap endorsement in addition to the employer's primary insurance contract, and the exclusionary clause effectively precludes coverage for the alleged conduct, then the insurer is under no duty to defend or indemnify the employer.[12] Because the conduct alleged by appellee Hughes is excluded from coverage and because there is no stopgap endorsement, appellant is under no duty to defend or indemnify Plastivax regarding Hughes's intentional tort claim.

Appellant's assignment of error has merit.

---

**12.** We wish to note that we do not address the question whether or not the coverage language in a commercial general liability policy as found in this case, which does not contain an effective exclusionary clause regarding a substantially certain intentional tort occurring in the course of employment, should be held to provide liability insurance under the fact of this case. This express question was not submitted for our consideration in this case.

The judgment of the trial court is reversed, and judgment is entered for appellant.

*Judgment reversed.*

JOSEPH E. MAHONEY and NADER, JJ., concur.