BERLEKAMP PLASTICS, INC., Appellant,

v.

BUCKEYE UNION INSURANCE COMPANY, Appellee.

[Cite as *Berlekamp Plastics, Inc. v. Buckeye Union Ins. Co.* (1997), 124 Ohio App.3d 92.]

Court of Appeals of Ohio,
Sixth District, Sandusky County.

No. S–97–004.

Decided Oct. 31, 1997.

*Gerald R. Kowalski* and *Jeffrey J. Madrzykowski,* for appellant.

*Gary L. Nicholson,* for appellee.

---

MELVIN L. RESNICK, Presiding Judge.

This declaratory judgment action is before the court on appeal from a grant of summary judgment to appellee, Buckeye Union Insurance Company ("Buckeye Union"). The Sandusky County Court of Common Pleas declared that coverage for an "employer's intentional tort" was not provided under a commercial general liability policy issued to appellant, Berlekamp Plastics, Inc. ("Berlekamp").

Appellant sets forth the following assignments of error:

"I. The trial court erred in granting summary judgment in favor of Buckeye Union where the injuries to Greg Lindsay were neither expected nor intended by Berlekamp.

"II. The trial court's holding that no coverage existed to Berlekamp from Buckeye Union is in contradiction to public policy.

"III. The trial court was incorrect in relying on the Ohio State Supreme Court's decision of *Wedge Products, Inc. v. Hartford Equity Sales Co.* in denying coverage to Berlekamp."

The underlying facts of this case are not in dispute.

On September 15, 1994, Gregory L. Lindsay, an employee of Berlekamp, was injured during the course and scope of his employment when a "shop vac" exploded. Subsequently, Lindsay and his spouse, Michelle L. Lindsay, filed suit against his employer seeking damages for Gregory's injury.

At the time Gregory Lindsay was injured, Berlekamp had a comprehensive business insurance policy with Buckeye Union. The commercial general liability section of this policy provides coverage for "sums that the insured becomes legally obligated to pay because of 'bodily injury' * * * to which this insurance applies." Under this clause, Buckeye Union also has the "right and duty to defend any 'suit' seeking those damages." The pertinent exclusions to coverage read:

"Section I–Coverages

"2. Exclusions

"This insurance does not apply to:

"a. 'Bodily injury' * * * expected or intended from the standpoint of the insured.

"* * * *

"e. 'Bodily injury' to

"(1) An employee of the insured arising out of and in the course of employment by the insured * * *."

In September 1995, Buckeye Union rejected appellant's request to defend and indemnify Berlekamp in the suit brought by Gregory and Michelle Lindsay. Buckeye Union rejected Berlekamp's claim based on the provision in the commercial general liability policy excluding coverage for bodily injury to an employee of the insured "arising out of and in the course of employment by the insured." Appellant again sought coverage of its claim in November 1995; Buckeye Union denied coverage.

In May 1996, Berlekamp instituted a declaratory judgment action asking the court to find that, under the Buckeye Union/Berlekamp insurance contract, Buckeye Union had a duty to defend and indemnify Berlekamp. Buckeye Union, Gregory Lindsay, and Michelle Lindsay were named as defendants in the action.

Buckeye Union moved the court for summary judgment asserting that, as a matter of law, no coverage was owed Berlekamp under the commercial general liability policy in the intentional tort action brought by the Lindsays. Buckeye Union relied on the "expected or intended" clause of its insurance policy with Berlekamp to support this assertion.

In its own motion for summary judgment, combined with a memorandum in opposition to appellee's motion, appellant maintained that Buckeye Union was estopped from raising the "expected or intended" exclusion because the insurer based its rejection of appellant's claim solely on the fact that Lindsay's injury occurred during the course of his employment. In the alternative, appellant contended that, in cases where an employee's cause of action is premised on the "intentional tort" of his employer, an insurance liability policy clause excluding coverage for bodily injury "expected or intended from the standpoint of the insured [the employer]" is inapplicable.

On December 18, 1996, the trial court denied appellant's motion for summary judgment and granted appellee's motion for summary judgment. Relying on *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 31 OBR 180, 509 N.E.2d 74, the court held that an intentional tort allegedly committed by an employer against his employee is not covered by an insurance policy which excludes protection for bodily injury "expected or intended" by that employer.

The general law applicable in the review of this case is as follows.

Civ.R. 56(C) provides that summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated, (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to summary judgment as a matter of law.

In its first assignment of error, Berlekamp contends that, in order for an employer's insurer to avoid coverage for injury to an employee on the basis of an exclusion for expected or intended injury, the insurer must show that the injury itself was expected or intended. Appellant asserts that evidence that the act was intentional is insufficient. Appellant claims that appellee failed to offer the requisite evidence to create a genuine issue of material fact on this issue; therefore, Berlekamp is entitled to coverage under the Buckeye Union commercial general liability policy.

The resolution of this assignment of error depends on the law applicable to the question raised by appellant. As it appears to be a question of first impression in this district, an analysis of the evolution of the law in this area is necessary.

There are two types of intentional torts existing under Ohio law. *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St.3d 173, 175, 551 N.E.2d 962, 964. One is described as a "direct intent" tort such as battery. In such a case, "the actor does something which brings about the exact result desired." *Id.* The other is a "substantial certainty" intent tort in which the "actor does something which he

believes is substantially certain to cause a particular result, even if the actor does not desire that result." *Id.*

The vast majority of cases alleging an employer intentional tort involve the second category of intent. *Id.* The employer intentional tort exception, a "substantial certainty" intent tort, to Ohio's Workers' Compensation law was first enunciated in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572. The Ohio Supreme Court defined this type of an intentional tort as "* * * an act * * * committed with the belief that such injury is substantially certain to occur." *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, paragraph one of the syllabus. In order to establish intent for the purpose of proving an employer intentional tort, the employee must demonstrate:

"* * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

Thus, once intent is established in this type of case, the employer is treated by the law as if he had desired to produce the result. *Id.* That is, the intent is inferred from "substantial certainty" of injury. *Harasyn v. Normandy Metals, Inc.,* 49 Ohio St.3d at 176, 551 N.E.2d at 965.

In *Wedge Products, Inc. v. Hartford Equity Sales Co.* at the syllabus, the Ohio Supreme Court construed an exclusion in an employer's general liability insurance policy that was almost identical to the "expected or intended" exclusion in the policy before this court. The *Wedge* court reasoned that the employer could not have committed acts with the belief that its employees were substantially certain to be injured without expecting such injuries to occur. *Id.* at 67, 31 OBR at 181–182, 509 N.E.2d at 75–76. Accordingly, the court found (1) if the employer's intentional tort was based on a specific intent to injure, the contract provided no coverage because the employer "intended" to injure the employee and (2) if the employer's intentional tort was based on the substantial certainty that injury to the employee would result, the contract also provides no coverage because the injury is "expected" by the employer. *Id.* See, also, *Baker v. Aetna Cas. & Sur. Co.* (1995), 107 Ohio App.3d 835, 842, 669 N.E.2d 553, 558. The *Wedge* court also noted that it was contrary to public policy to insure against intentional torts, and concluded that the "substantial certainty" intent tort in that case was excluded from coverage. *Id.*

The Ohio Supreme Court next dealt with this question in *Harasyn*, a case where the sole issue was whether public policy precluded insurance coverage for an employer whose tortious act toward an employee was performed with the knowledge that injury was substantially certain to occur. The court determined that it was not against public policy to provide insurance coverage for "substantial certainty" intent torts. *Id.* at the syllabus.

The particular fact pattern in *Harasyn* affected the outcome of subsequent appellate cases and therefore warrants some discussion in the present case. The general liability policy issued to the employer in *Harasyn* excluded coverage for bodily injury expected or intended from the standpoint of the insured. *Id.*, 49 Ohio St.3d at 173, 551 N.E.2d at 962–963. Nonetheless, the policy also contained a supplemental or "stop gap" endorsement that extended coverage to " 'damages because of bodily injury * * * sustained by any employee of the Insured [Employer] arising out of and in the course of his employment by the Insured * * *.' " *Id.* at 177, 551 N.E.2d at 966. In addition, the supplemental endorsement expressly deleted all exclusions in the general liability policy and then set forth its own list of exclusions. *Id.* The Ohio Supreme Court found that none of the listed exclusions precluded coverage of a "substantial certainty" intent tort. The court distinguished *Harasyn* from *Wedge Products, Inc.* by pointing out that the liability policy in *Wedge* did not contain a supplemental endorsement and specifically excluded coverage for employees for claims arising out of their employment. *Id.* at 177–178, 551 N.E.2d at 966–967.

A third Ohio Supreme Court case has also had its effect on the manner in which appellate courts deal with clauses in commercial general liability insurance policies that purportedly exclude "substantial certainty" intent torts from coverage. See *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906 (interpreting homeowners' insurance policies).

In *Swanson*, the tortfeasor aimed a BB gun in the direction of a group of teenagers at a picnic table and shot three times. *Id.* According to the tortfeasor, Bill Swanson, he was aiming at a sign near the teenagers and not at the group itself. However, one of the teenagers, Todd Baker, was struck in the right eye with a BB and, ultimately, lost that eye. Baker and his parents brought a civil action against Bill and his parents.

In a related declaratory judgment action brought by the Swansons' insurers, the trial court found that, because Bill Swanson did not intentionally injure Todd Baker, the insurance companies had a duty to defend and indemnify the Swanson family. The appellate court reversed this judgment, finding that "it is the intentional nature of the act of the insured rather than the result of such an act * * * which determines whether coverage will apply." The Ohio Supreme Court reversed the appellate court decision, holding, at the syllabus:

"In order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended."

Following *Wedge, Harasyn,* and *Swanson,* some appellate districts have, in the absence of a supplemental endorsement to the contrary, applied *Wedge* and held an "expected or intended provision" in an insurance contract excludes liability coverage for employer "substantial certainty" intent torts. *Westfield Ins. v. Jarrett Reclamation Serv.* (1996), 114 Ohio App.3d 492, 683 N.E.2d 415 (Seventh Appellate District); *Millers Mut. Ins. Co. v. Plastivax, Inc.* (1996), 113 Ohio App.3d 678, 681 N.E.2d 1363 (Eleventh Appellate District); *Budacov v. Thomarios Painting Co.* (July 19, 1995), Summit App. No. 16962, unreported, 1995 WL 434411 (Ninth Appellate District); *Westfield Ins. Co. v. Malvern Wood Products, Inc.* (Sept. 12, 1994), Carroll App. Nos. 633 and 634, unreported, 1994 WL 501762 (Seventh Appellate District); *Continental Ins. Co. v. United Foundries, Inc.* (Dec. 30, 1993), Stark App. No. 9342, unreported, 1993 WL 564227 (Fifth Appellate District).

Notably, only one of these cases raised the issue of the effect of the rule set forth in *Swanson* on this exclusion. See *Millers Mut. Ins. Co. v. Plastivax, supra.* In *Plastivax,* the court acknowledged that, in order to exclude coverage, *Swanson* placed an additional obligation on the insurer of showing that an actual injury was intended, that is, that there was evidence of "direct intent" by the employer to cause the exact injury suffered by the employee during the course of his employment. Despite this finding, the *Plastivax* court concluded that, in the absence of a stop gap endorsement providing coverage for "substantial certainty" intent employer torts, an "expected or intended" exclusionary clause effectively bars coverage for the employer's alleged conduct.

In cases where the general liability policy contained an "expected or intended" clause and a stop gap or supplemental endorsement, other courts have distinguished *Wedge* and depended on the language of the supplemental endorsement to determine whether coverage for a "substantial certainty" intent tort was excluded. *Baker v. Aetna Cas. & Surety Co.* (1995), 107 Ohio App.3d 835, 843, 669 N.E.2d 553, 558–559 (Tenth Appellate District); *Estate of Izold v. Suburban Power Piping Corp.* (Mar. 20, 1997), Cuyahoga App. No. 70873, unreported, 1997 WL 127197 (Eighth Appellate District).

In yet other cases involving "substantial certainty" intent torts where the terms of the exclusion are different from those in this case, courts have reached differing conclusions based on their interpretation of the relevant law. These cases suggest the difficulty appellate courts are experiencing in reconciling the holdings in *Wedge, Harasyn,* and *Swanson.*

In *Ward v. Custom Glass & Frame, Inc.* (1995), 105 Ohio App.3d 131, 663 N.E.2d 734, the Eighth District Court of Appeals considered a stop gap endorsement to a general liability policy that agreed to pay the insured/employer all sums that the employer was required to pay as damages because of bodily injury to an employee "arising out of and in the course of his or her employment by the insured." The relevant exclusion under this endorsement provided that the insurance did not apply "to bodily injury or death resulting therefrom caused intentionally by or at the direction of the insured." *Id.* at 138, 663 N.E.2d at 738. The Eighth District Court of Appeals first discussed *Harasyn.* In doing so, it mistakenly stated that the Ohio Supreme Court interpreted the "expected or intended" exclusion in the *Harasyn* case and ruled that "an intentional tort that is inferred from substantial certainty of injury and not as deliberate intent to harm an employee is covered by a [liability insurance] policy." *Id.* at 140, 663 N.E.2d at 740. The *Ward* court then discussed and opted to follow *Swanson.* It determined that the insurer in *Ward* failed to demonstrate that the insured/employer intended to cause injury to its employee. *Id.* at 143, 663 N.E.2d at 741–742.

When next faced with an exclusion in a stop gap employers' liability endorsement that excluded coverage for "any injury sustained because of an act committed intentionally by or at the direction of you * * *," the Eighth District Court of Appeals again relied on *Swanson* to find that the insurer had not demonstrated that the injury to the employee (who died as the result of an on-the-job accident) was expected or intended. *Beacon Ins. Co. of Am. v. Kleoudis* (1995), 100 Ohio App.3d 79, 85, 652 N.E.2d 1, 4–5.

However, in interpreting similar language in a later case, *Presrite Corp. v. Commercial Union Ins. Co.* (1996), 113 Ohio App.3d 38, 680 N.E.2d 216, the Eighth Appellate District ignored *Swanson.* Instead, the *Presrite* court found that coverage for "substantial certainty" intent torts is excluded only when the insurance policy explicitly excludes this type. *Id.* at 44, 680 N.E.2d at 220.

The Second District Court of Appeals attempted to ascertain the consequences of the rules set forth in *Wedge, Harasyn,* and *Swanson* in *Miller v. Midwestern Indemn. Co.* (Feb. 23, 1996), Montgomery App. No. 15360, unreported, 1996 WL 397450, dismissed as having been improvidently certified (1997), 77 Ohio St.3d 1261, 674 N.E.2d 367.

The *Miller* case arose from the death of an employee who was injured during the course of his employment. The decedent's employer admitted liability and joined with the estate of the employee in, among other things, a declaratory judgment action against the employer's commercial insurer.

The policy between the employer and its insurer contained a general liability section that excluded from coverage any bodily injury "to an employee of the

insured arising out of and in the course of employment by the insured" and any bodily injury "expected or intended from the standpoint of the insured." A supplemental employer liability endorsement expressly modified the general liability section and provided coverage for bodily injury to employees that arise out of and in the course of their employment. The supplemental endorsement did *not* contain an exclusion for bodily injury that was expected or intended.

After a thorough analysis of the relevant case law, the *Miller* court determined that, because the supplemental endorsement failed to include a specific "expected or intended" exclusion, coverage was provided to the employer. In addition, the Second District Court of Appeals went one step further and determined that such language, either in the general liability section or in a supplemental endorsement, would not exclude coverage for the employer, American Concrete, in that case. The *Miller* court held, albeit in *dicta:*

"We find that Swanson is controlling on the issue of intended or expected exclusions. As interpreted by the Supreme Court in *Swanson* and by this court in *Moler v. Beach* (1995), 102 Ohio App.3d 332 [657 N.E.2d 303], intended or expected injury exclusions do not come into operation unless it is proved that the insured not only intended the act, but also intended the resulting injury. The exclusion does not apply if " 'the insured intentionally does an act, but has no intent to commit harm, even if the act involves the foreseeable consequences of great harm or even amounts to gross or culpable negligence.' " *Swanson,* 58 Ohio St.3d at 190 [192, 569 N.E.2d at 910], quoting *Allstate Ins. Co. v. Steinemer* (C.A.11, 1984) [723 F.2d 873].

"In the present case, American Concrete has stipulated that because it failed to maintain the forklift, the harm to its employees was a substantial certainty. There is no evidence, however, that American Concrete intended [that] Jeffery Miller be killed by the forklift. Thus, the intended or expected injury exclusion would not operate to eliminate coverage for Miller's death."

The Supreme Court of Ohio has not decided the effect of *Swanson* on "expected and intended" clauses in commercial general liability policies purporting to exclude "substantial certainty" employer torts from coverage. It could be argued that *Swanson* involves a "direct intent" tort and is therefore inapplicable to the case before us. We cannot agree. The *Swanson* court was interpreting an "expected or intended" clause, the same type of clause interpreted in *Wedge.* In *Wedge,* the Ohio Supreme Court referred to the injury resulting from an employer intentional tort as an "expected" injury. Further, in *Swanson,* the court discussed the fact that in order to avoid coverage an insurer must demonstrate that the injury itself was "neither intended nor substantially certain to occur." *Id.,* 58 Ohio St.3d at 193, 569 N.E.2d at 911. Employer intentional

torts are those which the employer is substantially certain will occur. Thus, it appears that *Swanson* is applicable to such torts.

Nevertheless, adopting such an approach sets up a seeming conflict between *Swanson* and case law specifically governing employer intentional torts. As stated above, *the employer's intent to produce the injury is inferred from its conduct. Harasyn,* 49 Ohio St.3d at 176, 551 N.E.2d at 965. See, also, *Swanson,* 58 Ohio St.3d at 196, 569 N.E.2d at 912–913, Wright, J., dissenting (citing to *Harasyn* and *Wedge* for the proposition that intent to harm can be inferred as a matter of law in a case where the insured could reasonably expect that his or her conduct would result in bodily injuries which are the natural and probable result of that conduct). Nonetheless, as ostensibly referred to by Justice Wright, this "inferred intent rule" is applicable in only certain limited circumstances. See *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 665 N.E.2d 1115 (intent to injure inferred as matter of law from acts of sexual molestation of a child); *Westfield Ins. Co. v. Roberts* (1993), 93 Ohio App.3d 211, 638 N.E.2d 124 (intent to injure inferred as matter of law when insured fires a gun at the victim at point blank range). There is no indication that the Ohio Supreme Court either intended or intends to include employer intentional torts in this category. Consequently, due to the language used in *Swanson,* we are of the opinion that it is applicable to "substantially certain" intent cases. Accordingly, we conclude that intended or expected injury exclusions in commercial general liability insurance policies are ineffective unless it is shown that the insured/employer not only intended the act but also intended the particular resulting injury. *Miller, supra.*

In applying this rule to the present case, we find that, even though Berlekamp might have intended the use of a shop vac to clean up potentially explosive materials, appellee offered no evidence that Berlekamp intended the actual injury to Gregory Lindsay. Determination of this issue is a question of fact for the trier of fact. *Moler v. Beach* (1995), 102 Ohio App.3d 332, 657 N.E.2d 303. Therefore, the trial court erred in granting summary judgment to Buckeye Union on the basis that the clause in Berlekamp's general liability policy excluding bodily injury expected or intended from the stand point of the insured barred coverage for the injury to Gregory Lindsay as a matter of law.

Appellant's first assignment of error is found well taken.

The contentions in Berlekamp's second and third assignments are intertwined. The arguments presented are (1) the trial court's judgment is contrary to public policy, and (2) the court erred in relying on *New Hampshire Group v. Frost* (1995), 110 Ohio App.3d 514, 674 N.E.2d 1189, rather than *Swanson,* in reaching its decision.

**102**

In *Wedge Products, Inc. v. Hartford Equity Sales*, 31 Ohio St.3d at 67, 31 OBR at 181–182, 509 N.E.2d at 75–76, the Ohio Supreme Court found, among other things, that it is against public policy to allow insurance coverage for intentional torts. Thus, despite the fact that the tort in that case involved employer "substantial certainty" intent rather than "direct intent," the court concluded that the employer was not provided coverage under its general liability insurance policy. *Id.* In *Harasyn v. Normandy Metals, Inc.*, at the syllabus, the court reconsidered its position, however, and held:

"Public policy does not prohibit an employer from securing insurance against compensatory damages sought by an employee in tort where the employer's tortious act was one performed with the knowledge that injury was substantially certain to occur."

 Therefore, appellant is correct in arguing that public policy does not preclude an employer from obtaining insurance coverage for injuries to its employee(s) which the employer knows are substantially certain to occur. Accordingly, the holding of the *New Hampshire Group v. Frost, supra,* on this issue is incorrect. See, also, *Presrite Corp. v. Commercial Union Ins.,* 113 Ohio App.3d at 42–43, 680 N.E.2d at 218–220 (Cuyahoga County Court of Appeals finds that it is not against public policy to insure substantial certainty intent torts). Moreover, the trial court in this case never stated that its denial of coverage under appellant's commercial general liability policy was based on public policy. Rather, the court relied on *Frost* for the proposition that the *Swanson* case did not vitiate the holding in *Wedge Products, Inc.* Consequently, appellant's second and third assignments of error as they relate to this issue are found not well taken.

Based on the disposition of appellant's first assignment of error, we must find that, to the extent that Berlekamp argues the applicability of *Swanson* to the case before us, appellant's third assignment of error is found well taken.

The trial court's grant of summary judgment to Buckeye Union Insurance Company is reversed. This case is remanded to the Sandusky County Court of Common Pleas for further proceedings in the declaratory judgment action. Costs of this appeal assessed to appellee, Buckeye Union Insurance Company.

*Judgment reversed*
*and cause remanded.*

SHERCK and KNEPPER, JJ., concur.