**BAKER, f.k.a. Hunter, Appellant,**

v.

**AETNA CASUALTY & SURETY COMPANY, Appellee.**

[Cite as *Baker v. Aetna Cas. & Sur. Co.* (1995), 107 Ohio App.3d 835.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE05–653.

Decided Dec. 21, 1995.

*Blumenstiel, Huhn, Wood & Adams, J.B. Blumenstiel* and *C. Richard Grieser,* for appellant.

*Reminger & Reminger Co., L.P.A.,* and *Clifford C. Masch,* for appellee.

Peggy Bryant, Judge.

Plaintiff-appellant, Shawna L. Baker, nee Hunter, appeals from a judgment of the Franklin County Court of Common Pleas entering summary judgment in favor of defendant-appellee, Aetna Casualty and Surety Co. ("Aetna") and denying summary judgment for plaintiff.

On January 31, 1992, while employed at Ken's Cardinal Supermarket in Columbus, Ohio, plaintiff was robbed at gunpoint. During the robbery, she sustained a shotgun blast at point-blank range, resulting in severe injuries to her face. On January 27, 1993, plaintiff initiated claims against several defendants, including intentional tort claims against her employer, Brookshire Cardinal Supermarket, Inc., d.b.a. Ken's Cardinal ("Brookshire"). Although Brookshire duly notified Aetna of plaintiff's claims, Aetna refused to defend or indemnify Brookshire. On March 8, 1994, Brookshire confessed judgment for $1,250,000.

On April 19, 1994, plaintiff filed a complaint against Aetna as Brookshire's commercial liability insurer. Plaintiff demanded a declaratory judgment that valid contracts and policies of insurance covered Brookshire's liability, that Aetna had had a duty to defend Brookshire, and that Aetna was liable for Brookshire's damages.

In her action against Aetna, plaintiff, on December 6, 1994, filed a motion for summary judgment. On January 6, 1995, defendant responded with a memorandum in opposition to plaintiff's motion and a cross-motion for summary judgment. On March 13, 1995, the trial court entered summary judgment for defendant and denied plaintiff's summary judgment motion, concluding that (1) plaintiff's claim fell within a contract term excluding coverage for bodily injury "expected or intended from the standpoint of the insured," and (2) public policy precluded any insurance for intentional torts.

Plaintiff timely appealed, assigning two related errors:

"I. In this supplemental action by plaintiff against the defendant insurance company to recover the judgment for damages due to personal injuries previously rendered for plaintiff against her employer, the trial court erred in holding as a matter of law that the policies of liability insurance issued by defendant to the insured employer did not cover the insured's liability for that judgment and thereby erred in granting summary judgment for defendant.

"II. The trial court erred in denying as a matter of law that the policies of liability insurance issued by defendant to the insured employer did cover the insured's liability for the judgment of plaintiff against her insured employer and thereby erred in denying summary judgment for plaintiff."

Because plaintiff's two assignments of error are interrelated, we address them jointly.

Plaintiff's assertions arise in the context of a summary judgment motion. Pursuant to Civ.R. 56, summary judgment will be granted only if no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which the party bears the burden at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, citing *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

In determining whether Brookshire's intentional tort is covered under Aetna's policy, we first consider the policy terms. Brookshire's commercial liability insurance coverage included a commercial general liability policy ("general policy") and an employers' overhead liability endorsement ("endorsement"). The general policy states:

"SECTION 1—COVERAGES

"COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

"1. Insuring Agreement

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' * * * to which this insurance applies. " * * *

"b. This insurance applies to 'bodily injury' * * * only if:

"(1) The 'bodily injury' * * * is caused by an 'occurrence' that takes place in the 'coverage territory,' and

"(2) The 'bodily injury' * * * occurs during the policy period."

The general policy also sets forth several exclusions to which the insurance issued does not apply:

"2. Exclusions

"This insurance does not apply to:

"a. 'Bodily injury' * * * expected or intended from the standpoint of the insured. * * *

" * * *

"d. Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

"e. 'Bodily injury' to:

"(1) An employee of the insured arising out of and in the course of employment by the insured;

" * * *

"This exclusion applies:

"(1) Whether the insured may be liable as an employer or in any other capacity[.]"

The endorsement, written for employers in the state of Ohio, changes the general policy. It amends the coverage section concerning bodily injury and property damage liability by adding the following language:

"This insurance applies to damages because of 'bodily injury' by accident or disease to your employee * * * arising out of and in the course of the employee's work. * * * This insurance applies only with respect to:

" * * *

"d. 'Bodily injury' for which benefits may be payable under the 'Workers Compensation Laws' * * * if in addition to those benefits you become legally liable to pay further damages for which you have no immunity under the 'Workers Compensation Laws' * * * but only to the extent of such further damages."

The endorsement also deletes exclusions (d) and (e) of the general policy, set forth above, and replaces them with the following substitute exclusions:

"a. 'Bodily injury' to any employee, if with respect to the employee, you:

"(1) have failed to comply with the 'Workers Compensation Laws' of any listed state;

"(2) have failed to buy or maintain insurance in the Workers Compensation Fund of any listed state; or

"(3) are in default in the payment of premium or furnishing information to the administration of that fund.

" * * *

"c. Any obligation for which you or another insurance company as your insurer may be held liable under any:

"(1) 'Workers Compensation Laws'

"(2) Disability Benefits or Unemployment Compensation Law; or

"(3) Any similar law."

■ In construing the general policy and the endorsement, we interpret the contract in its entirety. *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88–89, overruled on other grounds, *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. The endorsement, then, must be read as if its terms were printed directly in the body of the general policy. *Jay Huddle Storage, Inc. v. Midwestern Indemn. Co.* (Jan. 13, 1986), Henry App. No. 7-84-13, unreported, 1986 WL 806.

Here, the parties do not dispute that plaintiff's injury is a "bodily injury" arising out of an "occurrence" taking place within "coverage territory." Rather, they dispute whether Brookshire's confession of judgment falls within the endorsement language. To resolve the parties' contentions under the language of Aetna's endorsement, we must determine (1) whether plaintiff's injury "arises out of and in the course of her work with" Brookshire, and (2) whether Brookshire's confession of judgment falls within paragraph (d) of the endorsement.

As to the first point, in *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St.3d 173, 551 N.E.2d 962, the Supreme Court considered language similar to Aetna's endorsement. The general policy in *Harasyn*, as here, did not cover injuries "expected" or "intended" by the insured. The endorsement in *Harasyn*, however, as here, extended coverage for injuries sustained by any employee arising out of and in the course of employment for the insured.

In finding coverage for intentional torts under the policy language, the *Harasyn* court explained that the policy language extending coverage to injuries arising out of and sustained in the course of employment covered the intentional tort claim at issue there. While the policy in *Harasyn* also excluded coverage for damages covered by statutory compensation systems such as workers' compensation, the Supreme Court noted that "[n]owhere in the extensive list of detailed exclusions is there mention of employer intentional torts under *Blankenship*." *Id.* at 177–178, 551 N.E.2d at 966. As in *Harasyn*, the broad language of Aetna's policy covering injury "arising out of and in the course of an employee's work" reaches the plaintiff's intentional tort claims; similarly, none of Aetna's endorsement exclusions mentions intentional torts under *Blankenship*.

Resolution of the parties' coverage dispute thus reduces to an interpretation of paragraph (d) of the endorsement, which extends coverage for " 'bodily injury' for which benefits may be payable under the 'Workers Compensation Laws' * * * if in addition to those benefits [the insured] become[s] legally liable to pay further damages for which [the insured has] no immunity under the 'Workers Compensation Laws' * * *." Plaintiff claims that the provision extends stopgap coverage to employers liable for intentional torts against employees; defendant instead asserts the provision extends dual-capacity coverage for liability incurred beyond the employment relationship.

■ Generally, an employee who applies for and receives benefits through the workers' compensation system may also seek recovery for an intentional tort, despite acceptance of those benefits. *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, paragraph two of the syllabus. See, also, *Egan v. Nat. Distillers & Chem. Corp.* (1986), 25 Ohio St.3d 176, 25 OBR 243, 495 N.E.2d 904; *Bryant v. Lawson Milk Co.* (1985), 22 Ohio App.3d 69, 73, 22 OBR 167, 170, 488 N.E.2d 934, 938–939. Thus, while an employer is immune from suit under R.C. 4123.74 for damages payable through the workers' compensation laws, the employer may be held liable for additional damages arising out of a common-law intentional tort for which the employer lacks immunity. *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572.

■ Given the foregoing, plaintiff's intentional tort claim against Brookshire falls within the endorsement language of paragraph (d). Plaintiff sustained an injury in her role as an employee for Brookshire and thus sustained an injury "for which benefits may be payable under the Workers' Compensation Laws." Because any receipt of benefits payable under those laws did not preclude her subsequent action against Brookshire for intentional tort, she was able to recover judgment against Brookshire on that claim, rendering Brookshire "legally liable to pay further damages for which [it has] no immunity under the Workers' Compensation Laws."

Defendant's argument that paragraph (d) refers only to dual-capacity claims is unpersuasive. Under section I.A.2.e., the unmodified general policy, in an attempt to eliminate dual-capacity claims, excludes coverage for employees' bodily injuries arising out of and in the course of employment "whether the insured may be liable as an employer or *in any other capacity*." (Emphasis added.) If defendant explicitly were granting coverage for such claims in the endorsement, we would expect it to utilize similar language.

Despite such discrepancies in language between two provisions that defendant claims refer to the same doctrine, defendant attempts to support its dual-capacity argument by distinguishing its policy from that involved in *Harasyn*. The Supreme Court in *Harasyn* rejected a dual-capacity interpretation in favor of stopgap liability coverage, noting in a footnote that the endorsement contained no language concerning dual-capacity claims and that the basic policy covered such claims. *Id.* 49 Ohio St.3d at 178, fn. 6, 551 N.E.2d at 966–967. While the *Harasyn* basic policy covered dual-capacity claims, the unmodified Aetna general policy exempts dual-capacity liability. Defendant emphasizes the distinction, apparently contending that its endorsement thus must provide dual-capacity, not stopgap, coverage. Contrary to defendant's contentions, dual-capacity coverage

does not necessarily result simply because its general policy excludes dual-capacity liability and its endorsement replaces that language.

The plain meaning of the language of paragraph (d) constitutes stopgap liability coverage for Brookshire's liability for intentional torts.[1] Indeed, the proposal of insurance defendant's agent sent to Brookshire indicated he would have $1 million in "stopgap liability coverage." If paragraph (d) of the endorsement and the language immediately preceding it do not grant such coverage, we have difficulty discerning what policy language does.

Defendant nonetheless relies heavily on *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 67, 31 OBR 180, 181–182, 509 N.E.2d 74, 75–76, and the general policy language which attempts to exclude coverage for bodily injuries "expected or intended from the standpoint of the insured." In *Wedge Products,* the Supreme Court considered an employer's policy covering bodily injury "neither expected nor intended from the standpoint of the insured" and concluded that the language provided no coverage for the employer's intentional tort, defined as "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." *Id.* at 66, 509 N.E.2d at 75, citing *Jones, supra,* at paragraph one of the syllabus. The *Wedge Products* court explained that injuries expected by the employer include injuries the employer was substantially certain would occur. *Id.* at 67, 509 N.E.2d at 75–76. Thus, if the employer's intentional tort is based upon its specific intent to injure the employee, the contract language provides no coverage; the injury is intended by the employer. *Id.* If the employer's intentional tort is based upon its substantial certainty that some injury to the employee will result, the contract language also provides no coverage; the injury is expected by the employer. *Id.*

While defendant's policy also contains an exclusion for injuries expected or intended from the standpoint of the insured, defendant's reliance on *Wedge* is misplaced. *Harasyn, supra,* was decided after *Wedge,* distinguished it, and found coverage for intentional torts under language similar to that found in defendant's policy and endorsement. Specifically, the policy in *Harasyn* defined covered occurrences as those incidents resulting "in bodily injury * * * neither expected nor intended from the standpoint of the insured." Defendant's policy seeks to accomplish the same end in its general policy through a specific exclusion. The

---

1. Defendant also asserts that *Harasyn* does not apply here because the *Harasyn* definition of "accident" could include assault and battery, while the Aetna policy employs a different definition. Defendant's argument is unpersuasive. The *Harasyn* court based its analysis on the endorsement language that employee bodily injuries arising out of and in the course of employment were covered. The *Harasyn* court did not analyze the terms "accident" or "assault and battery." *Harasyn, supra,* 49 Ohio St.3d at 177, 551 N.E.2d at 966.

endorsement in *Harasyn* granted coverage for injury "arising out of and in the course of * * * employment," as does defendant's endorsement. In distinguishing *Wedge,* the *Harasyn* court noted that in *Wedge* the policy specifically excluded coverage for claims by employees arising out of and in the course of their employment, and further did not contain a supplemental endorsement specifically covering such claims. Like *Harasyn,* defendant's policy has a supplemental endorsement covering such claims. Nothing in paragraph (d) immediately following that language diminishes the pertinent coverage the endorsement language provides, as discussed above. Under *Harasyn,* the language from the general policy excluding coverage for injuries expected or intended by the employer is not dispositive.

█ Moreover, even if we were to deem effective the exclusion in the policy regarding expected or intended injuries, the terms of the endorsement and the general policy would conflict. Rules of construction dictate that the endorsement terms control. *Workman v. Republic Mut. Ins. Co.* (1944), 144 Ohio St. 37, 46, 28 O.O. 564, 568, 56 N.E.2d 190, 194 ("the endorsement must be regarded as a modification of the terms of the original contract of insurance if a clear inconsistency appears"); *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 172, 24 O.O.3d 274, 278–279, 436 N.E.2d 1347, 1351 (endorsement extended underinsured motorist coverage to certain policy owners even though another part of the policy excluded such endorsements); *Brown v. Ohio Cas. Ins. Co.* (1978), 63 Ohio App.2d 87, 91, 17 O.O.3d 267, 269–270, 409 N.E.2d 253, 256–257 (special endorsement stating that coverage extends only to insured would prevail over conflicting policy omnibus clause). Because defendant's endorsement grants stopgap liability insurance written specifically for Ohio employers to cover "substantial certainty" torts, it controls over the language of the general policy. *Budacov v. Thomarios Painting Co.* (July 19, 1995), Summit App. No. 16962, unreported, 1995 WL 434411 (distinguishing between when a stopgap endorsement, written "specifically for Ohio employers" and extending coverage to employer intentional torts, is issued and when a general liability policy is issued); see, also, *Ward v. Custom Glass & Frame, Inc.* (1995), 105 Ohio App.3d 131, 663 N.E.2d 734; *Harasyn, supra,* 49 Ohio St.3d at 177, 551 N.E.2d at 966 (when endorsement covers bodily injury "sustained by any employee of the Insured arising out of and in the course of his employment by the Insured," endorsement on its face covers employer's intentional torts). Accordingly, defendant's policy provides coverage for Brookshire's intentional tort damages in this case.

Because defendant's endorsement terms provide coverage for Brookshire's intentional torts, we next must determine whether public policy permits insuring plaintiff's "substantial certainty" intentional tort claim against Brookshire. The Supreme Court has broadly held that "public policy does not prohibit an

employer from securing insurance against compensatory damages sought by an employee in tort where the employer's tortious act was one performed with the knowledge that injury was substantially certain to occur." *Harasyn, supra,* at syllabus. Distinguishing the situation from "direct intent" torts in which insurance may encourage people to harm others, the court concluded that "[w]here the employer's alleged tortious actions were not taken with deliberate intent to injure the employee, and where the damages sought are to compensate for injury rather than to punish wrongdoing, the public policy argument for depriving the employer of insurance protection is not compelling." *Id.,* 49 Ohio St.3d at 175–176, 551 N.E.2d at 965.

In arriving at its holding, the court discussed R.C. 4121.80, a 1986 enactment providing workers' compensation coverage for employees injured by employers' intentional torts, be they direct intent or "substantially certain torts." After its decision in *Harasyn,* the Supreme Court determined that the General Assembly had exceeded its constitutional powers when it enacted the statute, and thus declared R.C. 4121.80 unconstitutional *in toto. Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722. In 1992, the legislature repealed the statute.

Although R.C. 4121.80 concerned workers' compensation benefits for "direct intent" and "substantially certain" intentional torts, the *Harasyn* court limited its holding to permit private insurance only for "substantially certain" intentional torts. The *Harasyn* syllabus does not discuss R.C. 4121.80 or limit its holding by including statutory terms. Because the syllabus constitutes the law of the case, *Thackery v. Helfrich* (1931), 123 Ohio St. 334, 336, 175 N.E. 449, 450, and because the citation in *Harasyn* to R.C. 4121.80 is simply additional support for the policy considerations already stated in that opinion, *Harasyn* permits insurance coverage for "substantially certain" intentional torts, despite the repeal of R.C. 4121.80. See *Ward, supra* (June 29, 1995), Cuyahoga App. No. G7494, unreported ("the *Harasyn* Court's decision * * * was not premised on R.C. 4120.80. The mention of R.C. 4120.80 by the * * * Court was * * * mere obiter dicta. The court's reasoning was based on its analysis of the distinguishing factors that make up an intentional tort").

In determining that insurance coverage for Brookshire's intentional tort does not violate public policy, we depart from language in *Royal Paper Stock Co. v. Meridian Ins. Co.* (1994), 94 Ohio App.3d 327, 333, 640 N.E.2d 886, 890. In that case, this court determined that an employer's policy did not cover its intentional torts. After determining that the *Royal Paper* employer's liability for intentional torts did not fit within the coverage, this court noted that the remedy for a potentially illusory contract was an action for recision. *Id.* at 333, 640 N.E.2d at 890. In dicta not necessary to resolve any assignment of error, the court added

that "insurance coverage of employer intentional torts is truly contrary to public policy." *Id.* See, also, *New Hampshire Ins. Group v. Frost* (June 29, 1995), Cuyahoga App. No. 67823, unreported, 1995 WL 386943, citing *Royal Paper; Ward, supra.*

■ Because the *Harasyn* syllabus states that public policy permits insurance against "substantially certain" intentional torts, and because that statement of law is not affected by the repeal of R.C. 4120.80, the *Royal Paper* dicta do not apply. See *Ward, supra.* When a policy and endorsement provide coverage for an employer's intentional torts, public policy may permit insurance coverage for the employer's "substantially certain" intentional torts.

Because we resolve plaintiff's assignments of error in terms of the contract, we do not reach plaintiff's arguments concerning estoppel and enforcement of allegedly illusory contract terms.

Finally, defendant issued not only the general policy and endorsement already discussed, but also an excess liability, or umbrella policy. The endorsement modifying the general policy does not purport to modify the umbrella policy.

■ While the umbrella policy provides coverage for bodily injury caused by an occurrence during the policy period, it contains no reference to claims arising out of or in the course of employment. Further, the umbrella policy excludes from coverage bodily injury "expected or intended from the standpoint of the insured." Under the analysis employed in *Wedge,* the exclusion for expected or intended injury precludes coverage under the umbrella policy.

For the foregoing reasons, we sustain plaintiff's assignments of error with respect to the general policy and endorsement, but overrule them as to the umbrella policy.

Thus, we reverse the judgment of the trial court in part and affirm in part, and remand for further proceedings in accordance with this opinion.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

BOWMAN, P.J., concurs.

YOUNG, J., concurs separately.

JOHN C. YOUNG, Judge, concurring separately.

I concur with the result reached by the majority, insofar as I believe *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St.3d 173, 551 N.E.2d 962, is controlling in this case. Although I agree with the majority opinion in *Royal Paper*

*Stock Co. v. Meridian Ins. Co.* (1994), 94 Ohio App.3d 327, 640 N.E.2d 886, that coverage of employer intentional torts is generally contrary to public policy, I believe that the majority opinion is correct given the distinction made in the *Harasyn* opinion, as well as the language of the endorsement which modifies the general policy in the instant action. Accordingly, I concur.