This matter is before us on the appeal of the Estate of Isabel Fox, Gary Fox, Sr., and Debra Netzley from a summary judgment granted to Continental Insurance Company. Appellants' action against Continental arose from a January 20, 1995 auto accident involving the decedent, Isabel Fox. At the time, Fox was a passenger in an automobile driven by her daughter, Jane Baker. According to the stipulated facts, Baker's negligence caused the accident. All four occupants of the Baker car were killed, and the driver of the other vehicle, Calvin J. Rosenthal, was injured.
After the accident, Ms. Baker's insurance carrier, Erie Insurance Group, filed an interpleader action in Darke County Common Pleas Court and deposited its $300,000 policy limits with the court. Fox's estate was awarded $92,500, and the same amount was distributed to the estates of the other two passengers. Rosenthal then received the $22,500 remaining under the policy. Fox had at least twelve next of kin as defined by R.C. 2521.02. Allegedly, the next of kin had claims in excess of $400,000.
The policy limits of Fox's insurance policy with Continental were $100,000/300,000. In awarding summary judgment to Continental, the trial court found that all claims of the next of kin were collectively restricted to the $100,000 "each person" limit in the policy. As a result, after setting off the amount already received, the court decided that Appellants were entitled to receive only $7,500 under the Continental policy. Appellants contend the trial court erred, and raise the following assignments of error:
I. The trial court erred in not construing the conflict between three endorsements, applicable to policy number 70P07253009, most favorably for the insured.
II. The trial court erred in finding that the language in endorsement PP04000494, split uninsured motorists coverage — Ohio, provides an "each person" limit.
III. The trial court erred when it failed to find that the language in endorsement PP040000494, split-uninsured motorist coverage, is ambiguous.
IV. The trial court erred in failing to find that the within case is controlled by Schaeffer v. Allstate Insurance Company (1996),76 Ohio St.3d 553.
 I.
The first assignment of error focuses on a conflict among three forms listed on the declarations sheet. In this context, we note the following points. First, in support of cross-motions for summary judgment, the parties entered into joint stipulations of certain facts. Attached to these stipulations was Exhibit A, which the parties identified as "a complete and accurate copy of the declarations page from the Buckeye Union policy and all of the applicable policy forms." (As an aside, we note that the policy was issued by Buckeye Union, but no one has claimed either that Continental is an improper proper party to the lawsuit or that Buckeye Union should have been made a party).
In any event, the declaration sheet indicates that Policy No. 70P 0725 30 09 was issued by Buckeye Union Insurance Company to Isabel Fox as the named insured, with effective dates of December 20, 1994, through June 20, 1995. Uninsured motorist limits were listed as $100,000 each person and $300,000 each accident. Under section 6 of the declaration sheet, the following statements appear:
YOUR BILL HAS BEEN SENT UNDER SEPARATE COVER
PP 0369 0494 SPLIT LIABILITY LIMITS
PP 0400 0494 SPLIT UNINSURED MOTORISTS COVERAGE
POLICY INCLUDES 15% DISTINGUISHED DRIVER DISCOUNT
UM/UIM PER POLICY COVERAGE — $59
INM 165 0990
PP 0482 0694
ENDORSEMENTS ATTACHED — F1909 F1983 INM9 A1362 PAP115 A1370
ENDORSEMENTS ATTACHED — A539
PP 0405 0188 INA 68 0694 PAP 206 0786 INA 20 0687 PP 0186 0694
INM 164 1090 PAP 221 0694 PAP 222 0694 PP 0326 0694 PP 0001 0694
INA 46 1289 PP 0321 0694
(Emphasis added).
The forms at issue in the present case are PP 0400 0494, PP 0482 0694, and PP 0001 0694. According to Continental, PP 0001 0694 is the base policy, even though it is listed on the declarations sheet as an endorsement. Continental further claims that PP 0400 0494 and PP 0482 0694 are endorsements modifying the base policy, even though they are not specifically listed as endorsements on the declarations sheet. As support for these contentions, Continental mentioned in the trial court that the "base policy" was a copyrighted policy form drafted by Insurance Services Office (ISO) for use in different states, and that the base policy form was amended to make it appropriate for use in different states with varying motor vehicle insurance laws. No affidavits were submitted below to support Continental's statements.
By contrast, Appellants argue that PP 0001 0694 is an endorsement and that PP 0400 0494 and PP 0482 0694 are parts of the basic auto policy. As was noted above, PP 0001 0694 is specifically listed as an endorsement, but no express label has been given to either PP 0400 0494 or PP 0482 0694.
The resolution of this conflict between the forms is important to both sides, since two of the three forms provide greater limits of coverage for the wrongful death claims, while the remaining form restricts coverage even in wrongful death situations to the "each person" single limit. This latter form, PP 0400 0494, is titled "Split Uninsured Motorists Coverage — Ohio," and states as follows:
 The first paragraph of the Limit of Liability provision in the Uninsured Motorists Coverage endorsement is replaced by the following:
LIMIT OF LIABILITY
 The limit of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
 3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
The bottom of this document lists an ISO copyright date of 1993.
By contrast, PP 0482 0694 is entitled "Uninsured Motorists Coverage — Ohio," and states in pertinent part that:
 Part C — Uninsured Motorists Coverage is replaced by the following:
INSURING AGREEMENT
 A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury" caused by an accident.
* * *
B. "Insured" as used in this endorsement means:
1. You or any "family member".
2. Any other person "occupying" "your covered auto".
 3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.
* * *
LIMIT OF LIABILITY
 A. The Limit of Liability shown in the Declarations for this coverage is the maximum limit of liability for all damages arising from any one accident. This is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
 3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
This document bears an ISO copyright date of 1994.
And finally, PP 0001 0694 consists of eleven pages and is entitled "Personal Auto Policy." This document has a "Part C — Uninsured Motorists Coverage," which states as follows:
INSURING AGREEMENT
 A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury";
1. Sustained by an "insured"; and
2. Caused by an accident.
* * *
B. "Insured" as used in this part means:
1. You or any "family member".
2. Any other person "occupying" "your covered auto".
 3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.
* * *
LIMITS OF LIABILITY
 A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
 3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
Like the other forms, this document has an ISO copyright, but the date of the copyright is 1994.
Under both PP 0482 0694 and PP 0001 0694, Appellants would be entitled to the "each accident" maximum coverage of $300,000, because the limits of liability sections do not in any way restrict claims for injury or death arising from injury to a single person. Instead, these forms merely state that the limit of liability shown on the declarations page represents the insurer's maximum limit of liability for damages from any one accident, regardless of the number of insureds or claims made. On the other hand, if PP 0400 0494 controls, Appellants' collective recovery would be restricted to the $100,000 limit, since this form says that "[t]he limit of liability shown in the Schedule or in the Declarations for each person * * * is our maximum limit of liability for all damages arising out of "bodily injury" sustained by any one person in any one accident. * * * This is the most we will pay regardless of the number of: 1. Insureds [or] 2. Claims made." Further, while this latter form does not define "bodily injury," the term is defined elsewhere as "bodily harm, sickness or disease, including death, that results."
As was mentioned above, Continental claims that PP 0001 0694 is the basic policy of insurance. Continental says this policy was modified, first, by PP 0482 0694, which replaced the entire "Part C" in the basic policy. According to Continental, PP 0400 0494 ("Split Uninsured Motorists Coverage — Ohio") then modified the new Part C. Specifically, the limits of liability section in the new Part C was replaced with the more restrictive provision confining multiple wrongful death claimants to the "each person" limit. The trial court accepted Continental's statements as a "logical explanation as to why contradictory limitations of coverage are listed on the declarations sheet."
We disagree with the trial court. Regardless of the insurer's possible intent in issuing the various policy forms, the fact is that the insurer issued a contradictory and confusing declarations page. Well-established law requires ambiguities in insurance contracts to be resolved in favor of the insured. See, e.g., Etter v. Travelers Ins. Cos. (1995), 102 Ohio App.3d 325,332, and American Hardware Mut. Ins. Co. v. Mansfield Auto TruckPlaza (1984), 15 Ohio St.3d 367 (insurer created conflict between declarations page and policy, requiring ambiguities to be construed in favor of insured). In the present case, the insurer could easily have said on the declarations page that PP 0001 0694 was the basic policy and that the other two forms were endorsements. Instead of doing so, the insurer chose to label PP 0001 0694 as an endorsement and to say nothing about the other two forms. Further confusion was added because the most restrictive form (the Split Uninsured Motorists Coverage form) bears a copyright date of 1993. By contrast, the less restrictive forms bear the later date of 1994, leading a reasonable reader to conclude that the forms with the more liberal coverage limits were the ones that were effective.
We believe Continental is bound by its characterization of PP 0001 0694 as an endorsement, and by its failure to properly label the other forms as endorsements (or at a minimum, to resolve conflicts between the declarations page and the forms). Further, although the limits of liability in two of the three forms conflict, the endorsement would control in such a situation. See, e.g., Workman v. Republic Mut. Ins. Co. (1944), 144 Ohio St. 37,46, and Baker v. Aetna Cas. Sur. Co. (1995), 107 Ohio App.3d 835,843. Again, had the declarations page clearly and correctly indicated the status of the various forms, the result could have been different.
In light of the preceding analysis, the applicable provision in determining the coverage limits is PP 0001 0694. Under the limits of liability set out in that provision, Continental's maximum limit of liability is the amount provided for all damages arising from one accident, i.e., $300,000. Accordingly, the first assignment of error is sustained, and the trial court is directed to enter a declaration that Appellants are entitled to assert claims under the policy in the amount of up to $100,000 for each individual claimant. The total maximum recovery on behalf of all claimants is the $300,000 policy limits, minus an offset for the $92,500 already recovered from the tortfeasor, per R.C.3937.18(A)(2).
 II.
Our resolution of the first assignment of error is dispositive of this appeal. However, we will briefly address the arguments made in the second, third, and fourth assignments of error. In these assignments of error, Appellants contend that even if the "Split Uninsured Motorists Coverage — Ohio" form (PP 0400 0494) is applied, they would still be entitled to recover up to the "each accident" limits. The first point Appellants make in support of this argument is that the drafters of PP 0400 0494 filed statements with the Ohio Department of Insurance explaining the language used in the form. According to the drafters, PP 0400 0494 was designed to comply with the decision in Savoie v. GrangeMut. Ins. Co. (1993), 67 Ohio St.3d 500. More specifically, PP 0400 0494 was drafted in a way that would allow each insured to recover up to the "each person" limit of the policy for his or her wrongful death claim. As applied to this case, each Fox wrongful death claimant would be allowed to recover up to the "each person" limit of the policy ($100,000), subject to the "each accident" limitation for all claims combined ($300,000).
The second point Appellants raise is the alleged ambiguity of PP 0400 0494. In this regard, Appellants refer to the fact that each wrongful death claimant is an insured under the policy and that each has sustained damages arising out of the bodily injury to the decedent, Isabel Fox. According to Appellants, the language used in the first sentence of PP 0400 0494 does not clarify whether the "each person" limit is for damages sustained by the person actually injured in the accident or is for damages sustained by each insured damaged as a result of the injury to the person involved in the accident.
And finally, Appellants third point is that the trial court should have applied Schaeffer v. Allstate Ins. Co. (1996),76 Ohio St.3d 553. In Schaeffer, the Ohio Supreme Court stated in the syllabus that:
 [e]ach person who is covered by an uninsured motorist policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person policy limit. A provision in an insurance policy which reaches a contrary result is unenforceable.
Based on this holding, Appellants contend we should likewise hold the restriction in PP 0400 0494 unenforceable.
After consideration, we reject all of Appellants' claims. As an initial matter, we find no ambiguity in PP 0400 0494. Assuming for the sake of argument that Continental had properly issued the "basic policy" and endorsements, the split limits provision (PP 0400 0494) states that:
 [t]he limit of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages arising out of "bodily injury" sustained by any one person in any one accident.
As we mentioned above, bodily injury is defined as "bodily harm, sickness or disease, including death, that results." PP 0400 0494 goes on to say that "[t]his is the most we will pay regardless of the number of: 1. "Insureds"; [or] 2. Claims made."
We believe the above wording clearly indicates that regardless of the number of "insureds" or claims made, the total amount the insurer will pay for all damages arising out of the injury or death of one person is the "each person" limit. In this particular case, that amount would be $100,000. We also note that the Ohio Supreme Court has found similar limits clauses to be unambiguous. See, e.g., State Farm Auto. Ins. Co. v. Rose
(1991), 61 Ohio St.3d 528, overruled on other grounds in Savoie v.Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500. In Rose, the clause in question stated that:
 "The amount of bodily injury liability coverage is shown on the declarations page under `Limits of Liability — Coverage A — Bodily Injury, Each Person, Each Accident'. Under `Each Person' is the amount of coverage for all damages, including damages for care and loss of services, arising out of and due to bodily injury to one person."
Id. at 530. According to the Ohio Supreme Court, this clause made it "absolutely clear that all claims resulting from an injury to one person involved in a single accident will be subject to the `Each Person' limit of liability." Id. (Emphasis in original).
Although Rose was overruled in Savoie, Rose's holding on the clarity of the limits clause was not disturbed. Instead, Savoie
focused on the fact that the policy improperly ignored the "elevated status of wrongful death claims in Ohio" by limiting multiple claimants to a single per person limit Id. at 504. In the Savoie court's opinion, Rose and other decisions had misinterpreted the legislative status of wrongful death claims. Id. In particular, the court relied on the contents of R.C.2125.02, and Wood v. Shepard (1988), 38 Ohio St.3d 86. Of special note are the following observations made in Wood about these matters, i.e., that:
 [n]owhere in R.C. 3937.18 is authority granted to limit claims for wrongful death to a single person limit of liability. This is an important indicator of legislative intent because the statute expressly allows insurance companies to include policy provisions that grant the insurer the right of setoff * * * and prohibit stacking of insurance coverages. * * * When viewed in light of R.C. 2125.02, which grants the persons described therein separate claims for damages resulting from wrongful death, appellee's attempt to limit coverage to a single person limit of liability without any statutory authority to do so must be seen as clearly frustrating the purposes of R.C. 3937.18.
Id. at 90-91. Consistent with this view, Savoie observed that the General Assembly "had expressed the view that damages for wrongful death claims should not be limited." 67 Ohio St.3d at 504.
As has been mentioned in many cases, the legislature promptly amended R.C. 3937.18 to counteract the decision in Savoie. R.C.3937.18(H) now specifically authorizes insurers to include provisions in their policies which restrict wrongful death claims to a single limit. In this context, the statute states that:
 [a]ny automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section or selected in accordance with division (C) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.
Both sides agree that this version of R.C. 3937.18 applies to the present case. Appellants contend, however, that the policy is ambiguous because it does not conform to the precise wording in R.C. 3937.18(H). According to Appellants, the insurer should have said that damages arising out of the bodily injury, including death, of one person will constitute a single claim. We disagree that such wording was needed. PP 0040 0494 is nearly identical, in pertinent part, to the wording in R.C. 3937.18(H). We believe an individual reading the form would reasonably interpret it to mean that when injury or death of only one person has occurred, $100,000 is the total amount recoverable for all claims related to that injury or death. Furthermore, even though the policy in Rose
also included the terms "damages for care and loss of services," we do not consider that difference important. As we said, the wording of PP 0400 0494 is consistent with R.C. 3937.18(H). Moreover, the statement in PP 0400 0494 indicating that the "each person" limit is the most the insurer will pay regardless of the number of "insureds" or the number of claims made serves the same function as the language used in Rose.
In this regard, we note that Appellants have cited an Illinois case dealing with a limits clause similar to PP 0400 0494. See, Stearns v. Millers Mut. Ins. Assoc. Of Ill. (1996),278 Ill. App.3d 893, 663 N.E.2d 517. In Stearns, the court acknowledged that the insurer's restrictive interpretation of the limits clause was reasonable. However, the court also felt that a common-sense reading of the clause could lead one to believe that "each person who is an insured and entitled to compensatory damages, including the damages for loss of consortium * * * is entitled to the maximum limit of liability, * * * not to exceed the total occurrence limit." Id. at 897, 663 N.E.2d 520. Because differing and reasonable interpretations existed, the court chose the interpretation favoring the insured. We disagree with this analysis, because the court ignored an important part of the limits clause. Specifically, as in our case, the limits clause inSterns qualified coverage by stating that the limit of liability was the most the insurer would pay regardless of the number of insureds, claims made, vehicles or premiums shown in the declaration, or vehicles involved in the accident. We believe this is a significant qualification. We are unable to see how the provision in its entirety can be reasonably read other than to restrict the total payment for all damages arising from the death or injury of one person to the "each person" limit.
Furthermore, given the unambiguous nature of PP 0040 0494, we cannot consider extrinsic evidence of what ISO may have intended in drafting the form. Shifrin v. Forest City Enterprises, Inc.
(1992), 64 Ohio St.3d 635, syllabus. We also reject the application of Schaeffer v. Allstate Ins. Co. (1996), 76 Ohio St.3d 553. As was mentioned above, the court in Schaeffer held that provisions in policies restricting claims for loss of consortium to a single limit are unenforceable. Id. at syllabus. Although Appellants concede that the accident in Schaeffer
occurred long before the amendments to R.C. 3937.18, they claim that Schaeffer still controls. Their argument is based on the fact that Schaeffer did not limit its applicability to cases arising before the effective date of the amendments to R.C.3937.18. They additionally rely on the ambiguous nature of PP 0040 0494 (which we have already rejected), and on the remedial purpose of R.C. 3937.18. Again, we disagree.
The decision in Schaeffer was based on an automobile accident that took place in 1990. More important, Schaeffer relied heavily on Savoie, which has been superseded by the amendments to R.C.3937.18. See, Schaeffer, 76 Ohio St.3d at 557, and Farmers v.Ross (1998), 82 Ohio St.3d 281. In Farmers, the Ohio Supreme Court held that:
 For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties.
Id. at syllabus. Because the contracts in Farmers were entered into before the effective date of the amendments to R.C. 3937.18,Farmers applied Savoie. Likewise, Savoie was applied inSchaeffer, which, as we have said, involved events occurring long before the amendments became law. By contrast, the insurance contract in this case was renewed after the amendments, meaning that Savoie and Schaeffer would not apply. Instead, the rights and duties of Buckeye Union or Continental and Appellants would be governed by R.C. 3937.18(H). As we have already said, that section expressly lets insurers restrict multiple wrongful death claimants to a single "each person" limit.
Having rejected all the arguments of the Appellants, we would overrule the second, third, and fourth assignments of error if they were not moot.
As a final matter, we note that Appellants filed a motion on March 10, 1999, asking for leave to assert a constitutional challenge to Am. Sub. S. B. 20. According to Appellants, they did not make such arguments at the trial court level because of the Ohio Supreme Court's finding on the constitutionality of Am. Sub. S.B. 20 in Beagle v. Walden (1997), 78 Ohio St.3d 59. In light of our decision in Appellants' favor, the motion to supplement is moot. However, if we were to consider the motion, we would overrule it, given the fundamental rule that appellate courts will not consider issues which have not been presented first to the trial court. See, e.g., Heinz v. Steffen, (1996), 112 Ohio App.3d 174,181.
Based on the preceding discussion, the first assignment of error is sustained and assignments of error two, three, and four are deemed moot. Appellants' motion to supplement is also deemed moot, but to the extent it is not moot, the motion is overruled. Accordingly, the judgment of the trial court is reversed, and this case is remanded to the trial court for further proceedings consistent with our opinion.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Craig A. Dynes
Thomas J. Keener
Hon. Jonathan Hein