[Cite as *Ohio Bar Liab. Ins. Co. v. Wallace*, 2022-Ohio-131.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

OHIO BAR LIABILITY INSURANCE
COMPANY,                                          :

      Plaintiff-Appellee,                  :
                                     No. 110038
      v.                                           :

JASON D. WALLACE, ET AL.,                         :

      Defendants-Appellants.               :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 20, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-883774

*Appearances:*

Cavitch, Familo & Durkin Co., LPA, and Gregory E.
O'Brien, *for appellee.*

Daniel R. Bache, *for appellants.*

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Appellants Jason D. Wallace ("Wallace"), Daniel Bache ("Bache"), and
Wallace and Bache, L.L.C. (collectively "appellants") challenge the trial court's
judgment entry granting judgment on the pleadings and summary judgment in
favor of appellee Ohio Bar Liability Insurance Company ("OBLIC") on OBLIC's

complaint and appellants' counterclaim, respectively.  After a thorough review of the law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} Appellants are two individual Ohio attorneys and their limited liability company law firm, Wallace and Bache, L.L.C.  Appellants' legal practice involves representing students and their families in administrative law proceedings brought against the students' schools under the Individuals with Disabilities Education Act, 20 U.S.C. 1400 et seq. ("IDEA").

{¶ 3} Between December 2014 and November 2016, appellants filed due process complaints under IDEA on behalf of certain students and their parents against the school boards of the schools the students attended ("the school board defendants").  Each of the school board defendants ultimately prevailed in the underlying IDEA due process suits brought against them by appellants and their clients.

{¶ 4} After prevailing in their respective IDEA suits brought against them by the appellants and their clients, each school board defendant filed a separate lawsuit in federal court against appellants (collectively the "suits").  The only relief sought in each of the suits is an award of reasonable attorney fees under IDEA, and each suit alleges that appellants' underlying due process complaints were "frivolous, unreasonable, or without foundation," and/or that appellants continued to litigate their underlying cases after they had clearly become "frivolous, unreasonable, or

without foundation," and/or that their cases were brought for an "improper purpose."

{¶ 5} The particular suits were brought by the Akron Board of Education, Cleveland Heights-University Heights School District Board of Education, Solon City School District Board of Education, Liberty Mutual Insurance Company, Nordonia Hills City School District Board of Education, Hylant Administrative Services, L.L.C. d.b.a. HAS Claims Service, Chippewa Local School District Board of Education, and Wadsworth City School District Board of Education. There was an additional federal lawsuit filed by Wesco Insurance Company that sought a declaratory judgment on a professional liability policy issued to Wallace and Bache's prior law firm, Roderick, Linton & Belfance L.L.P.

{¶ 6} Appellants presented each suit to OBLIC for defense and indemnity. OBLIC had issued a professional liability insurance policy to Wallace and Bache L.L.C. on August 9, 2016, and renewed it one year later. Bache and Wallace were each named as additional insureds on an endorsement to the policy. The policy provided the law firm and those qualifying as "insureds" under it with $100,000 of professional liability insurance coverage for all claims arising out of the same "Professional Services," subject to a $300,000 aggregate limit per policy year and a $1,000 deductible. Coverage under the policy was provided on a "claims made and reported" basis.

{¶ 7} The policy provides, in pertinent part:

I. Coverage

To pay on behalf of the Insured all sums which the Insured shall be legally obligated to pay as money damages because of any "Claim" first made against the Insured and reported in writing to the Company during the "Policy Period," pursuant to Condition VI of this policy, and caused by:

(a) an act, error, or omission of the Insured or any person for whose acts, errors or omissions the Insured is legally liable, in rendering or failing to render "Professional Services" for others in the Insured's capacity as a lawyer or Notary Public;

\* \* \*

and except as otherwise excluded or limited by the other terms, conditions and exclusions of this policy;

\* \* \*

VI. Notice of Claim or Suit or Potential Claim

Upon the Insured's becoming aware of any acts, errors, or omissions which would reasonably be expected to be the basis of a "Claim" or suit covered hereby, written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable, together with the fullest information obtainable

{¶ 8} The policy defines certain terms as follows, under the section labeled

"Definitions":

(b) "Claim" means "a demand received by the Insured for money damages, including the service of suit or institution of arbitration or other alternative dispute resolution proceedings, against the Insured. A "Claim" shall be considered first made and reported when the Company receives written notice of the "Claim" or of any event which could reasonably be expected to give rise to a "Claim" in accordance with Condition VI.

\* \* \*

(e) "Effective Date" means "the date on which coverage became effective under the first policy issued by the Company, provided the same or substantially similar coverage has been in force continuously

without interruption under this or any prior policies issued by the Company."

* * *

(g) "Policy Period" means, "the period of time between the inception time and date shown in the Declarations and the time and date of termination, expiration or cancellation of coverage for the Named Insured, or the date that any other Insured is deleted from the policy, and specifically excludes any "Extended Reporting Period."

* * *

(i) "Professional Services," include "all services or activities performed by or on behalf of the Insured in a lawyer-client capacity."

{¶ 9} The policy provides as follows with regard to defense rights and responsibilities between the insurer and the insured:

III.  Defense and Settlement

With respect to such insurance as is afforded by this policy, the Company shall defend any "Claim" or suit against the Insured alleging such act, error, or omission and seeking money damages which are payable under the terms of this policy, and defend any "Claim" or suit seeking money damages arising out of "Advertiser's Liability" in connection with the Insured's advertising of legal services.  However, the Company shall not be required to defend any such "Claim" or suit arising solely out of an alleged act, error, or omission for which coverage is excluded by the terms, conditions and exclusions of this Policy.

* * *

{¶ 10} With regard to exclusions, the policy states:

This policy does not apply:

* * *

(i) to any "Claim":

1. arising out of any act, error, or omission occurring prior to the "Effective Date" of this policy if the Insured knew or could have

reasonably foreseen prior to the "Effective Date" that such act, error, or omission might result in any "Claim" or suit; or

* * *

(n) to any "Claim" for money damages for:

* * *

2. restitution, fines, penalties, sanctions or any award of attorney's fees imposed against any Insured, and/or any other person or entity under any one or more of the following: Rule 11 of the Federal Rules of Civil Procedure, Rule 11 of the Ohio Rules of Civil Procedure, Ohio Revised Code Section 2323.51 (the "frivolous conduct" statute), or under any other federal, state or local statute or rules of procedure or common law designed to deter frivolous conduct by any party or attorney engaged in litigation.

{¶ 11} In addition, the policy contains an "Exclusion of Prior Acts Endorsement," which specifically excludes coverage for any "act error or omission" involving Wallace and/or Bache that occurred prior to April 30, 2016. Further, the policy also includes an endorsement captioned, "Exclusion of Coverage for Specific Claims or Incidents" that specifically excludes the Akron School Board suit from coverage.

{¶ 12} OBLIC reviewed the suits and denied coverage for each. During one of the suits by the Cleveland Heights-University Heights School Board, the federal judge assigned to the matter sent a letter to OBLIC, stating that it may have a duty to defend appellants and ordered it to appear at a case-management conference. As a result of this letter and order, OBLIC filed suit against appellants, seeking the following declarations:

1. The Policy provides no professional liability coverage to Bache, for the claims alleged against him in the Akron Suit, or that such claims are

excluded, or barred due to the failure to fulfill a policy condition, and that OBLIC owes no duty to defend or indemnify Bache against any claims asserted against him by Akron in the Akron Suit.

2.  The Policy provides no professional liability coverage to Bache, Wallace or the Law Firm for the claims alleged in the Nordonia Suit, or that such claims are excluded, or barred due to the failure to fulfill a policy condition, and that OBLIC owes no duty to defend or indemnify the Law Firm Defendants against any claims asserted against them by Nordonia or Liberty in the Nordonia Suit.

3.  The Policy provides no professional liability coverage to Bache, Wallace or the Law Firm for the claims alleged in the Solon Suit, or that such claims are excluded, or barred due to the failure to fulfill a policy condition, and that OBLIC owes no duty to defend or indemnify the Law Firm Defendants against any claims asserted against them by Solon or Hylant in the Solon Suit.

4.  The Policy provides no professional liability coverage to Bache, Wallace or the Law Firm for the claims alleged in the First Heights Suit, or that such claims are excluded, or barred due to the failure to fulfill a policy condition, and that OBLIC owes no duty to defend or indemnify the Law Firm Defendants against any claims asserted against them by Heights in the First Heights Suit.

5.  The Policy provides no professional liability coverage to Bache, Wallace or the Law Firm for the claims alleged in the Second Heights Suit, or that such claims are excluded, or barred due to the failure to fulfill a policy condition, and that OBLIC owes no duty to defend or indemnify the Law Firm Defendants against any claims asserted against them by Heights in the Second Heights Suit.

6.  The Policy provides no professional liability coverage to Wallace or the Law Firm for the claims alleged in the Chippewa Suit, or that such claims are excluded, or barred due to the failure to fulfill a policy condition, and that OBLIC owes no duty to defend or indemnify the Wallace or the Law Firm against any claims asserted against them by Chippewa in the Chippewa Suit.

7.  The Policy provides no professional liability coverage to Bache, Wallace or the Law Firm for the claims alleged in the Wadsworth Suit, or that such claims are excluded, or barred due to the failure to fulfill a policy condition, and that OBLIC owes no duty to defend or indemnify

the Law Firm Defendants against any claims asserted against them by Wadsworth in the Wadsworth Suit.

8. The Policy provides no professional liability coverage to Bache or Wallace for the claims alleged in the Wesco Suit, or that such claims are excluded, or barred due to the failure to fulfill a policy condition, and that OBLIC owes no duty to defend or indemnify the Wallace or Bache against any claims asserted against them by Wesco in the Wesco Suit.

{¶ 13} Appellants filed a counterclaim for declaratory judgment, breach of contract, and bad faith. The trial court bifurcated the matter, staying adjudication of appellants' bad faith claim until it had determined the parties' respective rights and responsibilities under the policy.

{¶ 14} OBLIC moved for judgment on the pleadings arguing that the policy excluded coverage because (1) the policy provides coverage for "damages," not attorney fees charged as costs; (2) the policy excludes coverage for damages awarded in the form of attorney fees under any statute designed to deter frivolous conduct; (3) some of the suits were based upon claims of which appellants were aware or reasonably should have been aware prior to the policy's effective date; (4) the Akron suit arose from conduct prior to the issuance of the policy; and (5) some claims could and should have been disclosed in appellants' answers to the policy application.

{¶ 15} Appellants also moved for judgment on the pleadings, arguing that OBLIC's claimed exclusions do not apply and that there is ambiguity in the policy that must be construed in appellants' favor. The trial court granted judgment on the pleadings in favor of OBLIC and denied appellants' corresponding motion. The trial court then granted summary judgment on appellants' claim for bad faith.

{¶ 16} Appellants then filed the instant appeal, raising four assignments of error for our review:

> 1.  The trial court erred as a matter of law by failing to adhere to the language of the insurance agreement and ignoring the word "imposed."
>
> 2.  The trial court erred as a matter of law when ruling appellant attorneys should not receive a defense or indemnification based upon the deterrence of frivolous conduct exclusion of the insurance agreement.
>
> 3.  The trial court erred as a matter of law when it failed to consider all the claims for damages against the appellant attorneys that were not attorney fees.
>
> 4.  The trial court erred as a matter of law when it failed to allow appellants Wallace and Wallace and Bache LLC an opportunity to brief their claims once Wallace's bankruptcy stay was lifted.

## II. Law and Discussion

{¶ 17} Appellants' first three assignments of error stem from the trial court's granting of OBLIC's motion for judgment on the pleadings and denying appellants' motion.  At issue is whether the trial court properly interpreted the policy and consequently whether appellants' claims are subject to an exclusion relieving OBLIC of its duty to defend.

## A. Standard of Review

{¶ 18} Motions for judgment on the pleadings are governed by Civ.R. 12(C). This rule provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  In ruling on a Civ.R. 12(C) motion, the court is restricted to the allegations in the pleadings and any writings attached as exhibits to the pleadings.  *Schmitt v. Educational Serv. Ctr.*,

8th Dist. Cuyahoga No. 97623, 2012-Ohio-2210, ¶ 9. "'Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law.'" *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 18, quoting *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 569-570, 664 N.E.2d 931 (1996). Judgment on the pleadings is appropriate where, after considering the material allegations of the pleadings and all reasonable inferences to be drawn therefrom in a light most favorable to the nonmoving party, the court finds that the moving party is entitled to judgment as a matter of law. *Id.*

{¶ 19} We review a trial court's decision to grant a motion for judgment on the pleadings de novo. *Id.*

### B. Interpretation of the Policy Language

{¶ 20} An insurance policy is a contract. *Ross v. Farmers Ins. Group of Cos.*, 82 Ohio St.3d 281, 287, 695 N.E.2d 732 (1998). The insurer, being the one who selects the language in the contract, must be specific with the language it uses in the policy, and an exclusion from liability is required to be clear and exact in order to be given effect. *Lane v. Grange Mut. Cos.*, 45 Ohio St.3d 63, 65, 543 N.E.2d 488 (1989), citing *Am. Fin. Corp. v. Fireman's Fund Ins. Co.*, 15 Ohio St.2d 171, 239 N.E.2d 33 (1968); *Beacon Ins. Co. of Am. v. Kleoudis*, 100 Ohio App.3d 79, 88, 652 N.E.2d 1 (8th Dist.1995). Courts generally presume that if something is not excluded in an insurance contract, it is included. *Home Indemn. Co. v. Plymouth*, 146 Ohio St. 96, 64 N.E.2d 248 (1945); *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 214,

519 N.E.2d 1380 (1988). If a policy contains any ambiguity or contradiction, it must be construed in favor of the insured. *Thompson v. Preferred Risk Mut. Ins. Co.*, 32 Ohio St.3d 340, 513 N.E.2d 733 (1987).

{¶ 21} An insurer's duty to defend is broader than and distinct from its duty to indemnify. *W. Lyman Case & Co. v. Natl. City Corp.*, 76 Ohio St.3d 345, 347, 667 N.E.2d 978 ( 1996). The duty to defend an action is not determined by the ultimate outcome of the action or the insurer's ultimate liability. *Motorists Mut. Ins. Co. v. Trainor,* 33 Ohio St.2d 41, 294 N.E.2d 874 (1973), at paragraph two of the syllabus. The scope of the allegations in the complaint determines whether the insurance company has a duty to defend its insured. *Id.* If the allegations in the underlying complaint arguably, potentially, or even doubtfully, fall within the coverage of the policy, the insurer must fulfill its duty to defend. *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 179, 459 N.E.2d 555 (1984). "Coverage is provided if the conduct falls within the scope of coverage defined in the policy, and not within an exception thereto." *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 36, 665 N.E.2d 1115 (1996).

{¶ 22} With regard to OBLIC's defense rights and responsibilities, section III of the policy, "Defense and Settlement," states as follows:

> With respect to such insurance as is afforded by this policy, the Company shall defend any "Claim" or suit against the Insured alleging such act, error, or omission and seeking money damages which are payable under the terms of this policy * * * . However, the Company shall not be required to defend any such "Claim" or suit arising solely out of an alleged act, error, or omission for which coverage is excluded by the terms, conditions and exclusions of this Policy * * * .

**{¶ 23}** OBLIC asserts that it had no duty to defend or indemnify appellants because the suits were excluded by the policy, specifically by the following exclusion:

(n) to any "Claim" for money damages for:

\* \* \*

2. restitution, fines, penalties, sanctions or any award of attorney's fees *imposed* against any Insured, and/or any other person or entity under any one or more of the following: Rule 11 of the Federal Rules of Civil Procedure, Rule 11 of the Ohio Rules of Civil Procedure, Ohio Revised Code Section 2323.51 (the "frivolous conduct" statute), or under any other federal, state or local statute or rules of procedure or common law designed to deter frivolous conduct by any party or attorney engaged in litigation.

(Emphasis added.)

### 1. Attorney Fees "Imposed"

**{¶ 24}** Appellants' first assignment of error argues that the trial court erred in ignoring the use of the word "imposed" in the section of the policy that excludes coverage for "attorney's fees imposed against any Insured." Appellants contend that there has not been an award of attorney fees *imposed* against them.

**{¶ 25}** Appellants argue that "imposed" is a past-tense verb that requires a previous award of attorney fees before coverage can be denied. We are not persuaded by appellants' argument. Appellants are essentially asserting that the attorney fees would already have to be imposed against the insured prior to the exclusion being triggered. Adopting appellants' position would mean there would always be a duty to defend since an award of attorney fees would not be imposed until the suit was adjudicated. We cannot abide by this reading and instead interpret

the language of the exclusion to pertain to any claim that seeks the imposition of an award of attorney fees.

{¶ 26} Consequently, to determine whether the exclusion would apply or whether the duty to defend was triggered, we look solely at the claim itself and whether it seeks the imposition of attorney fees. In this case, the suits do seek the imposition of an award of attorney fees against appellants. As such, they fall within the exclusion, and there is no coverage. Appellants' first assignment of error is overruled.

## 2. Statute Designed to Deter Frivolous Conduct

{¶ 27} In their second assignment of error, appellants argue that the trial court erred in finding that the deterring frivolous conduct statute exclusion applied. Appellants contend that, in order for the exclusion to apply, OBLIC must demonstrate that IDEA was a statute designed to deter frivolous conduct by any party and that the party must be engaged in litigation.

{¶ 28} IDEA, 20 U.S.C. 1415(i)(3), provides for an award of attorney fees to prevailing parties and states in pertinent part:

(B) Award of attorneys' fees.

(i) In general. In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs—

(I) to a prevailing party who is the parent of a child with a disability;

(II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a

parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or

(III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

{¶ 29} Appellants contend that the actions by the school districts were not commenced under Fed.R.Civ.P. 11, Civ.R. 11, or R.C. 2323.51, which are the statutes and rules dealing with frivolous conduct. Appellants therefore assert that, in order for the exclusion to apply, OBLIC must demonstrate that IDEA was designed to deter frivolous conduct by any party and the party must be engaged in litigation; appellants argue that OBLIC has not made such a demonstration.

{¶ 30} We cannot agree with appellants' interpretation of the exclusion. It is not necessary that the entire IDEA was designed to deter frivolous conduct or that preventing frivolous conduct was not the purpose for which it was drafted. It is sufficient that a provision within the statute, in particular, subsection (i)(3)(B) of IDEA was, in fact, designed to deter frivolous conduct. This design is evident in the very language of the subsection, i.e., the statute pertains to claims that are "frivolous, unreasonable, or without foundation * * * ."

{¶ 31} Moreover,

[F]ederal courts have concluded that fee-shifting under IDEA is a sanction. The Ninth Circuit in *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*[, 631 F.3d 1117 (9th Cir.2011),] analogized the IDEA fee-shifting provision to Rule 11: "The legislative history [of IDEA] . . . reveals that section 1415(i)(3)(B)(i)(III) 'comes from another well-established Federal law: Federal Rule of Civil Procedure 11.'" [*Id.* at 1125]. Rule 11 "subject[s] parties to sanction for filing pleadings with an 'improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.'" *Id.* In a different case, the Ninth Circuit described IDEA fee-shifting as an "authorized sanction[]" that "penalizes parents or their attorney . . . ." *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1057 (9th Cir.2012). District courts for the District of Columbia and the District of Colorado expressly describe IDEA fee shifting as a sanction. *Dist. of Columbia v. Nahass*, 699 F.Supp.2d 175, 183 (D.D.C. 2010) ("acted in a sanctionable manner under 20 U.S.C. § 1415(i)(3)(B)(i)"); *Smith v. Cheyenne Mountain Sch. Dist. 12*, 2017 U.S. Dist. LEXIS 100475, 2017 WL 2791415, at *20 (D.Colo. May 11, 2017) ("IDEA's sanction provisions").

A "sanction" is "a penalty or coercive measure that results from failure to comply with a law, rule, or order." Black's Law Dictionary (10th ed. 2014). See ECF Nos. 53-1 at PageID#: 1350-51 ("[C]ourts interpreting similar insurance provisions have defined 'sanctions' as a 'penalty or punishment provided as a means of enforcing obedience to a law.'"); 59 at PageID#: 1645 ("The term 'sanction' has a clear legal meaning under Ohio law as a 'penalty or coercive measure that results from failure to comply with a law, rule, or order.'"). The IDEA fee-shifting provision fits comfortably inside that definition. The language and function of 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III) mirror fee-shifting under § 1988 and Rule 11, both of which are undoubtedly "sanctions."

*Wesco Ins. Co. v. Roderick Linton Belfance L.L.P.*, N.D.Ohio No. 1:17CV1813, 2018 U.S. Dist. LEXIS 160039, 9-11 (Sept. 19, 2018).

{¶ 32} The *Wesco* Court concluded that fee-shifting under 20 U.S.C. 1415(i)(3)(B) is a sanctioning operation, and we agree. Because the provision clearly intends to deter frivolous conduct with regard to claims under IDEA, claims for attorney fees brought pursuant to this section constitute claims for damages that were asserted under a statute designed to prevent frivolous conduct. Accordingly, there is no coverage for claims arising from an award of attorney fees under this section of IDEA.

{¶ 33} Appellants further argue that the exclusion does not apply because the exclusion relates solely to claims arising from an attorney "engaged in litigation," which they contend they were not. Appellants assert that the suits arose from an administrative, not judicial, process and thus do not constitute "litigation." We again cannot interpret the exclusion in the narrow manner that appellants suggest. First, the exclusion does not state that the insureds themselves had to be "engaged in litigation" for the exclusion to apply. The particular wording of the exclusion merely provides that the statute in question had to be *designed* to prevent frivolous conduct by a party or attorney engaged in litigation. The modifying phrase relates to the *purpose* of the statute in question and does not pertain to the actual conduct of the insured attorney.

{¶ 34} The language of the fee-shifting provision in IDEA applies to a party who "continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation." Consequently, the statute falls under the exclusion. This court cannot determine whether the fee-shifting provision of IDEA actually applies to the suits; that is a question for the district courts in which the suits are pending. Our task is simply to determine if the statute under which the claims were brought against appellants is covered by the exclusion. We find that it is.

{¶ 35} Thus, because the claims against appellants in the subject suits were brought under IDEA's fee-shifting provision, which is a statute that was designed to deter frivolous conduct by attorneys engaged in litigation, the exclusion applies, and appellants' second assignment of error is overruled.

## C. Damages Other Than Attorney Fees

{¶ 36} In their third assignment of error, appellants assert that the trial court failed to consider the claims for damages against appellants that were not attorney fees. Appellants appear to be arguing that there should be coverage for the litigation expenses sought by the school defendants. Appellants contend that the expenses are not recoverable costs and therefore must be considered money damages, which would preclude the exclusion discussed above.

{¶ 37} Coverage under the policy only extends to claims seeking "money damages." By appellants' own admission, they are referring to costs or expenses, not damages. Accordingly, the fees sought by the school districts, such as those for hearing officers and court reporters, do not constitute a claim for money damages covered by the policy. The trial court did not err, and appellants' third assignment of error is overruled.

## D. Appellants' Bad Faith Claim

{¶ 38} Appellants' final assignment of error argues that the trial court erred by failing to allow appellants an opportunity to brief their claims once Wallace's bankruptcy stay was lifted. This assignment of error relates to OBLIC's motion for summary judgment on appellants' bad faith claim.

{¶ 39} Because we have found that the trial court did not err in determining that coverage was excluded on all of the suits, the trial court also properly ruled that appellants' bad faith claims were without merit. There was nothing that appellants could have submitted in a brief that would have changed the outcome of the motion

for summary judgment.  The trial court therefore did not err in ruling on the motion for summary judgment prior to the submission of any briefing by appellants.  Thus, appellants' fourth assignment of error is also overruled.

### III. Conclusion

{¶ 40} There was no coverage for appellants' claims under the policy.  The trial court did not err in granting judgment on the pleadings on OBLIC's complaint in favor of OBLIC and denying appellants' corresponding motion.  The trial court further did not err in granting summary judgment in favor of OBLIC on appellants' counterclaim.  All of appellants' assignments of error are overruled, and the judgment of the trial court is affirmed.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS WITH SEPARATE OPINION

MARY EILEEN KILBANE, J., DISSENTING:

{¶ 42} I respectfully dissent from the majority opinion. I would find the Ohio Bar Liability Insurance Company's ("OBLIC") contract of malpractice insurance provided to appellants Jason D. Wallace, Daniel Bache, and Wallace and Bache, L.L.C. (collectively "Appellants") required OBLIC to indemnify and defend Appellants against the claims brought by the school board defendants. I disagree with the majority's interpretation of the key words in the relevant exclusion used to deny coverage and overrule Appellant's first and second assignments of error. The majority's interpretation impermissibly allows OBLIC to arbitrarily decide what claims brought by their insureds constitute "frivolous conduct" on the basis that attorney fees "could be" imposed, without a finding of frivolous conduct or an actual imposition of attorney fees by a court. This interpretation is contrary to the plain and ordinary meaning of the words in the exclusionary clause, and this kind of interpretation can only serve to have a chilling effect on claims brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), the statute that was created to provide equality in the education of all children.

{¶ 43} The contract of insurance contains three sections, the Insuring Agreement, Exclusions, and Conditions. The Insuring Agreement has four subsections and three of which are relevant, I. Coverage, II. Definitions, and III. Defense and Settlement. Under the subsection I. Coverage, the contract states that OBLIC agrees:

To pay on behalf of the Insured all sums which the Insured shall be legally obligated to pay as money damages because of any "Claim" first made against the Insured and reported in writing to the Company during the "Policy Period," * * * except as otherwise excluded or limited by the other terms, conditions and exclusions of this policy.

Subsection two of the Insuring Agreement, II. Definitions, contains ten terms that OBLIC specifically defined. Definition (b) defines what a "claim" is:

(b) "Claim" means a demand received by the Insured for money damages, including the service of suit or institution of arbitration or other alternative dispute resolution proceedings, against the Insured.

What is not defined in this section is the term "frivolous conduct." Under subsection III. Defense and Settlement, OBLIC agrees to '"defend any 'Claim' or suit against the Insured alleging such act, error, or omission and seeking money damages which are payable under the terms of this policy * * *."'

{¶ 44} The second major section of the insurance contract, Exclusions, contains specific conditions listed (a) through (t), which if true result in a denial of coverage for Appellants. The majority's interpretation of the contract's Exclusion(n)(2) is determinative of Appellants' first and second assignment of errors. The relevant portion of Exclusion(n)(2) states:

EXCLUSIONS

This policy does not apply:

* * *

(n) to any "Claim" for money damages for:

* * *

2. restitution, fines, penalties, sanctions or any award of attorney's fees *imposed* against any Insured, and/or any other person or entity under

any one or more of the following: Rule 11 of the Federal Rules of Civil Procedure, Rule 11 of the Ohio Rules of Civil Procedure, Ohio Revised Code Section 2323.51 (the "frivolous conduct" statute), or under any other federal, state or local statute or rules of procedure or common law *designed to deter frivolous conduct by any party* or attorney *engaged in litigation*.

(Emphasis added.) To find that Exclusion(n)(2) applied to bar coverage, the majority had to find the claims brought by the school board defendants were claims for money damages for an award of attorney fees brought pursuant to a statute designed to deter frivolous conduct. Put another way, the majority had to find that Appellants' conduct was frivolous in bringing the IDEA claims against the school board defendants on behalf of the various parents and their disabled children. That interpretation unilaterally permits the insurance company to decide which claims are frivolous without a finding of frivolous conduct by a court of law or an independent review.

{¶ 45} This unilateral determination by OBLIC also runs contrary to the IDEA statute, which states "the court, in its discretion, may award reasonable attorneys' fees * * *." 20 U.S.C. 1415(i)(3)(B)(i)(II). The award of attorney fees is discretionary. They are not automatically imposed just for being unsuccessful on an initial IDEA claim. This self-serving interpretation empowers the insurer with extrajudicial determinations is contrary not only to the IDEA statute but also to the terms of Exclusion(n)(2).

{¶ 46} This can be seen in the majority's interpretation of the word "imposed" in Exclusion(n)(2). Looking at the plain and ordinary meaning of the

word "imposed" I am compelled to find that the word is unavoidably a verb in the past tense. *Travelers Indemn. Co. v. Reddick*, 37 Ohio St.2d 119, 121, 308 N.E.2d 454 (1974) ("[W]hen words used in a policy of insurance have a plain and ordinary meaning, it is neither necessary nor permissible to resort to construction unless the plain meaning would lead to an absurd result."), citing *Olmstead v. Lumbermens Mut. Ins. Co.*, 22 Ohio St.2d 212, 216, 259 N.E.2d 123 (1970). This means there must already be an imposition of attorney fees for the frivolous conduct before this exclusion would apply. Rather than interpret the word as written, the majority opinion "cannot abide by this reading" so they "interpret the language of the exclusion to pertain to any claim that seeks the imposition of an award of attorney fees." *Ante* at ¶ 25. This interpretation not only rewrites the contract but also grants OBLIC unfettered discretion to deny coverage based on the mere allegations in a complaint against their insureds. This court's job is to interpret the words in a contract. *Id.* The drafter chose the words, and this court's interpretation must be constrained by the ordinary plain meaning of those words. *Id.* The word chosen by the drafter was "imposed," a past-tense verb, which means the attorney fees must have been imposed before Exclusion(n)(2) applies. To allow an insurance company to deny coverage for any claim where attorney fees "could be" imposed is absurd.

{¶ 47} For attorney fees to already be imposed for frivolous conduct there must first be a finding by a court that Appellants' conduct was in fact frivolous for the exclusion to apply. The record in this case is devoid of any findings of fact by the trial court, which makes this court unable to review or determine whether the

alleged frivolous conduct in fact qualifies as frivolous conduct. Instead, the school board defendants in their suits and in their prayers for relief requesting attorney fees merely alleged — alleged is the key word — that Appellants' conduct in bringing the IDEA claims against them was frivolous conduct. To permit the insurance company to arbitrarily decide that the allegations against their insured are true as a justification for denying coverage is impermissible.

{¶ 48} I take similar issue with the majority's interpretations of the phrases "statute * * * designed to deter frivolous conduct" and "engaged in litigation" in Exclusion(n)(2). The phrases are not defined in the contract's definitions section so they must be given their ordinary plain meaning. *Alexander v. Buckeye Pipeline Co.,* 53 Ohio St.2d 241, 245-246, 374 N.E.2d 146 (1978). "When construing undefined words in an insurance policy, a court must give the words used in the contract their plain and ordinary meaning." *State Farm Auto Ins. Co. v. Rose*, 61 Ohio St. 3d 528, 531, 575 N.E.2d (1991). The majority found "[i]t is sufficient that a provision within of the statute, in particular, subsection (i)(3)(B) of IDEA was, in fact, designed to deter frivolous conduct[,]" and that "[t]his design is evident in the very language of the subsection, i.e., the statute pertains to claims that are 'frivolous, unreasonable, or without foundation.'" *Ante* at ¶ 30. A portion of statute that "concerns itself" with frivolous claims is not the language necessary under the exclusion for it to apply, instead the language requires that the statute itself must be designed to deter frivolous conduct.

**{¶ 49}** Even assuming there had been a finding of frivolous conduct and an award of attorney fees imposed on Appellants, I do not believe the IDEA statute was "designed" to deter frivolous conduct, which is what the language of Exclusion(n)(2) requires. The IDEA statute explicitly sets forth its purpose:

(d) Purposes. The purposes of this title [20 U.S.C. 1400 et seq.] are—

(1)

(A) to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living;

(B) to ensure that the rights of children with disabilities and parents of such children are protected; and

(C) to assist States, localities, educational service agencies, and Federal agencies to provide for the education of all children with disabilities;

(2) to assist States in the implementation of a statewide, comprehensive, coordinated, multidisciplinary, interagency system of early intervention services for infants and toddlers with disabilities and their families;

(3) to ensure that educators and parents have the necessary tools to improve educational results for children with disabilities by supporting system improvement activities; coordinated research and personnel preparation; coordinated technical assistance, dissemination, and support; and technology development and media services; and

(4) to assess, and ensure the effectiveness of, efforts to educate children with disabilities.

20 U.S.C. 1400(d). Statutes are designed for a purpose. The stated purpose of the statute, by its own text, clearly demonstrates it was not designed to deter frivolous conduct by any party or attorney. As such, I do not believe the phrase in

Exclusion(n)(2) regarding a statute designed to deter frivolous conduct encompasses the IDEA statute because that was not its purpose.

{¶ 50} Arguably, the phrase is ambiguous as to whether it refers to the purpose of the entire statute or a subsection of the statute; even so, the ambiguity must be construed against the drafter. *Reddick*, 37 Ohio St.2d 119, 121, 308 N.E.2d 454 ("[T]his court has held on numerous occasions that where the meaning of language used in a contract of insurance is doubtful, uncertain, or ambiguous, the language will be construed strictly against the insurer, the party who prepared the contract."). However, the majority's interpretation essentially construes the language against Appellants by finding that a subsection of the IDEA statute is sufficient to qualify the entire IDEA statute as one designed to deter frivolous conduct. This interpretation that merely unsuccessful claims brought pursuant to the IDEA statute constitute "frivolous conduct" is unacceptable. This blanket finding, with no facts as to why Appellants lost on their IDEA claims, only serves to benefit the drafter, which is contrary to Ohio law. *Id.* The majority's conclusion will only serve to have a chilling effect on the attorneys who bring these important claims under this statute to protect children with disabilities.

{¶ 51} Last, I disagree with the majority's interpretation of the phrase "engaged in litigation." I would find the phrase "engaged in litigation" is unambiguous and that the plain meaning of the words necessarily entails the court system. The ordinary meaning of these words as cited in Appellants' brief:

See Merriam-Webster, https://www.merriamwebster.com/dictionary /in%201itigation, (last accessed January 19, 2021) (Defining "in litigation" as: "being decided in a court of law"); Black's Law Dictionary, https://thelawdictionary.org/litigation/ (last accessed January 19, 2021) (defining litigation as "[a] A judicial controversy. A contest in a court of justice, for the purpose of enforcing a right.")

The administrative proceedings Appellants participated in pursuant to the IDEA statute took place outside of the courthouse and thereby cannot be considered "litigation" under the plain meaning of the word. I do not believe that the conduct from which the claims arose was from any attorney "engaged in litigation." Further, assuming the phrase is ambiguous, it should still be construed against the drafter, which this court again fails to do by denying Appellants' interpretation in favor of one that benefits the insurer. *Id.*

{¶ 52} Therefore, based on the foregoing I would find the language of Exclusion(n)(2) does not apply and that the trial court erred in granting judgment on the pleadings in OBLIC's favor and denying Appellants' corresponding motion. Similarly, I would find the trial court erred in granting summary judgment in favor of OBLIC on Appellants' counterclaim and remand the case back to the lower court. For these reasons, I respectfully dissent